LEWIS H. SPENCE, receiver, & others *vs.* GEORGE REEDER
& another.[1]

Suffolk.   October 8, 1980. — February 2, 1981.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Boston Housing Authority.   Housing.   Summary Process.   Practice, Civil,*
Class action, Receiver.   *Waiver.   Public Policy.   Due Process of Law,*
Class action.   *Judge.*

In an action by the Boston Housing Authority, through its court-
appointed receiver, to evict certain tenants of a housing project, the
judge erred in applying to the tenants an "emergency eviction pro-
cedure," which had been adopted by order of the court pursuant to a
joint request of the parties involved in a class action brought against
the authority by project tenants, where the tenants' interests in oppos-
ing adoption of the order were not adequately represented in the pro-
ceedings leading to establishment of the procedure, even though they
were members of the class of tenants represented in the class action.
[407-410]
The plaintiff tenants in a class action against the Boston Housing Authori-
ty could, with proper compliance with due process requirements and
court rules, waive a tenant's rights concerning lease termination set
forth in the authority's leases with its tenants and procedural rights
contained in court rules concerning pretrial discovery, and could agree
to accept lease modifications that would permit different procedural
rules to govern "emergency" eviction proceedings based on future
misconduct specifically described in those rules; such waivers and
agreements, however, might have to be tested on a case by case basis in
order to assure that procedural due process was provided in any such
emergency eviction proceeding.   [410-413]
The plaintiff tenants in a class action against the Boston Housing Authori-
ty could not validly waive a tenant's right under G. L. c. 121B, § 32,
to request a hearing by the authority prior to termination of his tenan-
cy.   [413]
Discussion of the authority of a judge to enter orders, and in particular an
order establishing an "emergency eviction procedure," in an institu-
tional receivership proceeding intiated by tenants of housing projects

---

[1] Irene Reeder.

under the control of the Boston Housing Authority where the receivership was ordered solely to achieve statutory goals. [413-419]

In a proceeding initiated by the court-appointed receiver of the Boston Housing Authority to evict certain tenants in accordance with an "emergency eviction procedure," there was no support in the record for the tenants' claim that the judge was required to disqualify himself by the fact that he had appointed the receiver and approved the emergency procedure. [419-420]

A tenant of a housing project under the control of the Boston Housing Authority could properly be evicted for the acts of an adult household member, not a signatory of the lease, in breach of the terms of the lease. [420-421]

In an action by the Boston Housing Authority, through its court-appointed receiver, to evict certain tenants under an "emergency eviction procedure" which had been adopted in connection with a class action against the authority, the question of the issuance or denial of a stay of execution pending appeal was discretionary with the judge. [421-422]

CIVIL ACTION commenced in the Superior Court Department on July 11, 1980.

The case was tried before *Garrity*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Arthur L. Johnson* for George Reeder & another.

*S. Stephen Rosenfeld* (*Margot Botsford* with him) for Lewis H. Spence, receiver.

*Edmund P. Daley*, for Armando Perez & others, plaintiff class.

*Gerard J. Clark*, for Boston Public Housing Tenants Policy Council, Inc., plaintiff-intervener.

*Robert M. Cohen*, for Bromley Heath Tenant Management Corporation, amicus curiae, submitted a brief.

*Richard C. Allen, Susan G. Anderson, Michael J. Ciota, Dean Amrose, Marc Lauritsen, James Bisceglia, James S. Singer, James F. Donnelly, Cushing Giesey, Julia K. Johnson & Nancy King*, amici curiae, submitted a brief.

*Francis X. Bellotti*, Attorney General, & *Anthony P. Sager*, Assistant Attorney General, for Secretary of Com-

munities and Development, amicus curiae, submitted a brief.

WILKINS, J. By this action, the Boston Housing Authority (BHA), acting through its court-appointed receiver, sought to recover possession of residential premises in the Charlestown-Bunker Hill development leased under a written lease to the defendants (Reeders). This eviction proceeding was commenced as an adjunct to the long-continuing *Perez* litigation concerning housing conditions in BHA developments.[2] The basic object of the *Perez* litigation, a class action, is to afford all similarly situated BHA tenants their statutory right to decent, safe, and sanitary housing. We have noted previously the deplorable inadequacy of BHA premises, affecting a substantial percentage of the residents of Boston. See *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333, 341-342, appeal dismissed sub nom. *Perez* v. *Bateman*, 423 U.S. 1009 (1975) (*Perez I*). We have also recited extensively the persistent failure of the BHA, prior to the receivership, both to address and to correct serious deficiencies in its operation and to remedy the appalling condition of many of its units. *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 715-726 (1980) (*Perez II*).

Following the appointment of the receiver in February, 1980, the subject of safety in BHA developments became a focus of attention. On May 29, 1980, the BHA through its receiver, the plaintiff class, and the plaintiff-intervener Boston Public Housing Tenants Policy Council, Inc. (Tenants Policy Council), moved for the establishment of an emergency eviction and injunction procedure by which the

---

[2] Aspects of the *Perez* litigation have been before this court twice previously. In the first case, we held that certain State defendants were not required to provide funding necessary to rectify sanitary code violations in certain BHA premises. *Perez* v. *Boston Hous. Auth.*, 368 Mass. 333, 336-341, appeal dismissed sub nom. *Perez* v. *Bateman*, 423 U.S. 1009 (1975). In the second case, which has a closer relationship to the eviction action against the Reeders, we upheld the judge's determination to appoint a receiver for the BHA. *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703 (1980).

Superior Court would authorize expedited eviction proceedings in situations where a tenant or a household member committed one or more of certain serious crimes. In circumstances that will be described more fully presently, the judge approved that request on June 3, 1980. The new emergency eviction procedure was first applied to the Reeders, whose adult son, a resident of their household, had allegedly slashed the throat of a female tenant in the Charlestown development in early May, 1980. The Reeders raised various challenges to the emergency eviction procedure and to its application to them. The judge rejected those challenges, a jury found for the BHA on August 7, 1980, and a judgment of possession was entered in the BHA's favor against the Reeders.

On the Reeders' expedited appeal, which we transferred here on the joint application of the BHA and the Reeders, we conclude that the judgment must be reversed because the interests of the Reeders were not fairly and adequately represented in the course of the adoption of the emergency eviction procedure. Because of the wide interest in the scope of authority of the court in the receivership proceeding, in the appropriate treatment of various matters in this class action, and in the propriety of the adoption of an emergency eviction procedure, we discuss various issues argued by the parties that need not be decided in order to dispose of the Reeders' appeal itself. These subjects are of importance in determining the effect, if any, of the order adopting the emergency eviction procedure (and the effect of any subsequent order of the same general character).

In adopting the emergency eviction procedure, the judge made certain findings based on three sources: an affidavit filed by the receiver in support of the parties' joint motion, evidence concerning safety and security received in the course of many hearings in the *Perez* proceeding, and information provided by the receiver in many meetings with the judge. A hearing was held on the day the joint motion was filed. It does not appear that anyone attended or was represented at the hearing other than the parties who favored the

allowance of the joint motion. Nor does it appear that attention was paid to whether the interests of class members who might have opposed the motion should have been represented in the course of considering whether to enter the order establishing the emergency eviction procedure.[3]

The judge made findings as to the condition of the BHA and BHA housing which we summarize. A state of emergency relative to safety and security existed in many BHA developments. The emergency was "worsened" by acts of violence by certain tenants against other tenants and against BHA employees and property and by other illegal conduct. Many acts of violence appeared to be racially motivated. These illegal acts and illegal conduct resulted in significant part from failures of the BHA to institute proper management procedures. Ordinary and usual rules governing eviction from BHA developments "do not contemplate the current almost total absence of safety and security in the BHA's developments and are not designed to cope with such emergency conditions." The relief requested in the joint motion was critical to protect the rights and interests of all BHA tenants and critical to the success of the receivership. Absent the prescribed relief, tenants and BHA employees were likely to suffer substantial and unnecessary physical and mental harm and many tenants would be forced to vacate their apartments for reasons of personal safety, increasing an already very high vacancy rate and leading to vandalism of abandoned apartments.

Based on these findings, the judge ordered the adoption of the emergency eviction procedure. In support of that order, he ruled that the emergency eviction procedure was consistent with Federal law and Department of Housing

---

[3] The order describes the procedure as an "Emergency Eviction and Injunction Procedure." For convenience, this opinion refers to the procedure as the emergency eviction procedure. The order permits the BHA to request preliminary injunctive relief including "ordering the tenant household to preliminarily vacate the premises." No such injunction is involved in this case, and the propriety of such an injunction is, of course, not before us.

and Urban Development (HUD) regulations, with the regulations of the Commonwealth's Executive Office of Communities and Development (EOCD), certain provisions of which were waived by EOCD, and with the law of the Commonwealth. The judge made no specific findings in justification for his order's overriding of statutory requirements. He did not discuss alternative procedures or the feasibility of some other action directed toward safety in and around BHA developments.[4]

Under the terms of the order, the emergency eviction procedure was to apply to cases in which the BHA alleged that a tenant or a member of a tenant's household, or both, committed or threatened to commit certain serious crimes of violence in or nearby a BHA development or committed certain drug offenses in a BHA development.[5] He directed that the BHA submit an ex parte application to invoke the emergency eviction procedure as to a particular tenant, with notice to the plaintiff class and to the Tenants Policy Council that they could appear and be heard. Use of the emergency eviction procedure would be authorized if the

[4]No claim is made here that the emergency eviction procedure contravenes any Federal statutory or regulatory requirement. The EOCD agreed to waive any of its requirements inconsistent with the emergency eviction procedure upon the entry of the judge's order but expressed no intention to waive any constitutional or statutory requirement. The Reeders make no challenge to the validity of EOCD's waiver of the requirements. Objections to the judge's ruling that the order does not conflict with State law and claims that the order fails in certain respects to satisfy constitutional requirements are discussed subsequently in this opinion.

[5]These criminal acts are stated in the judge's findings, rulings, and order, as follows: "(1) physically harmed another tenant(s) or employee(s) of the BHA in or nearby a development operated by the BHA; (2) committed acts of serious violence against the property of another tenant(s) or employee(s) of the BHA in or nearby a development operated by the BHA; (3) threatened to seriously physically harm another tenant(s), BHA employee(s) or the property of other tenants or of the BHA in or nearby a development operated by the BHA; or (4) carried or kept upon the premises or any common area of a development of the BHA a Class A, Class B or Class C controlled substance as defined in G.L. c. 94C, § 31 or a dangerous weapon as defined in G.L. c. 269, § 10(a), (b) or (k)."

court "finds that there is sufficient cause to believe that use of the Procedure is warranted." A tenant's lease could be terminated on forty-eight hours' written notice. That notice would state the specific reasons for the termination, although the BHA could assert other reasons at any subsequent hearing.[6] The BHA was relieved from offering to hold and from holding a private conference or grievance hearing concerning the termination and eviction.[7]

At the end of the forty-eight hours' notice period, the BHA was authorized to file a summons and complaint for summary process "as a limited intervention in *Perez* v. *BHA*." The tenant was required to file an answer within forty-eight hours after service of the summons.[8] Discovery was available only by order of the court, but the judge indicated that he would allow reasonable and necessary discovery.[9] The trial

[6]The order adopting the emergency eviction procedure purported to permit the BHA to assert reasons for termination beyond those stated in the initial notice at any subsequent hearing. We need not consider here whether that provision conflicts with G. L. c. 121B, § 32, concerning notice with reasons, or with due process requirements. No ground for termination of the Reeders' lease was advanced in this proceeding other than those stated in the initial notice sent to them.

[7]This provision had to do with certain rights which a tenant normally had to pre-eviction agency consideration of whether to terminate the lease. Detailed pre-eviction procedures were prescribed by a BHA tenant's lease (and the tenants' handbook), and by the requirements of the EOCD. Moreover, G. L. c. 121B, § 32, inserted by St. 1969, c. 751, § 1, states that a tenant of a housing authority "at his request shall, except in the case of nonpayment of rent, be granted a hearing by a housing authority at least fifteen days prior to any [termination of his lease]."

[8]The judge directed that eviction actions under the emergency eviction procedure would not be transferable to the Housing Court of the City of Boston. Normally, a tenant is authorized by G. L. c. 185C, § 20, to transfer his or her case to the Housing Court which has jurisdiction of the action. At the trial level, the Reeders did not challenge this ruling, and the issue is not before us on this appeal.

[9]The Reeders challenged the restrictiveness of the order concerning discovery. Discovery was allowed in their case, and, in this appeal, they make no claim that their case was unfairly prejudiced by the judge's rulings concerning discovery.

of the eviction action was to be set no later than forty-eight hours after the time to answer.[10]

The judge ordered that the emergency eviction procedure would be in effect for 120 days and that all contrary BHA regulations and lease provisions would be suspended during that time. The period of the emergency eviction procedure was extended on October 1, 1980, to the end of November. We are advised that the BHA has determined not to seek a further extension of the procedure until it has received the decision in this case.

On July 7, 1980, the BHA filed and the judge approved an application to invoke the emergency eviction procedure against the Reeders. The application set forth in detail the circumstances of an armed assault with a knife by the Reeders' eighteen-year old son on a twenty-one year old BHA tenant in her apartment in the Charlestown development on or about May 2, 1980. The application also set forth various threats against the woman if she persisted in pressing charges against the Reeders' son. Although the son had been in custody since his arrest on May 3, 1980, a companion of the son, also charged in connection with the incident, had not been in custody. On July 11 a complaint was filed and a summons issued. Counsel for the Reeders expeditiously and conscientiously filed a variety of motions, demanded a jury trial, and made demands for discovery to which counsel for the BHA made prompt response.[11] The judge heard the various motions and made various rulings. We need not recite these procedural steps and note simply that, in various ways, the Reeders challenged the emergency eviction procedure and its application to them. After continuances and two relatively insignificant amendments of the complaint, the case was tried to a jury on August 6 and 7, 1980.

---

[10] The Reeders received considerably more time prior to trial. Their trial date initially was July 17. Their trial commenced on August 6.

[11] We are impressed with the quality of representation given to the Reeders and to the BHA at the trial level and with the quality of the briefs filed in this expedited appeal.

Four written interrogatories were submitted to the jury who answered them affirmatively, in summary, as follows: (1) On May 2, 1980, the defendants' son, who (it was stipulated) was eighteen at the time and living with his parents, unlawfully entered the apartment of another tenant in the Charlestown development and slashed her throat without justification or excuse. (2) The defendants' son had a reputation for violence of which the defendants knew or should have known. (3) The presence of the defendants' son in their household constituted a "reasonable likelihood of serious repeated interference with the rights of other tenants" or amounted to the "creation or maintenance of a serious threat to other tenants." (The quoted words are substantially the same as two of the grounds for lease termination by the BHA stated in the Reeders' lease.) (4) What occurred was a violation of the lease between the BHA and the Reeders and the BHA should be permitted to evict the Reeders for cause shown.

The Reeders appealed from the judgment. The judge allowed an appeal bond in the limited amount of $50, and the judge denied a motion for stay of execution pending appeal. Ultimately, the parties agreed to a stay of execution pending appeal and to an expedited appeal. With this background, we turn first to consider whether the emergency eviction procedure properly was applied to the eviction proceeding against the Reeders.

1. *The effect of the order on the Reeders.* The BHA has not argued generally that the Reeders were bound by the order adopting the emergency eviction procedure and thus foreclosed from challenging the procedure. Rather the BHA contends that the Reeders had an unrestricted right to challenge the emergency eviction procedure within the eviction action itself. One might well question the efficacy of a system designed for the expeditious disposition of certain eviction actions which permitted every such case to turn into a challenge to the propriety of a comprehensive order establishing procedures for an entire class of cases. Further, one might question the reasonableness of a system that

allowed a given tenant to challenge the application of the emergency eviction procedures only before a judge who already had approved those procedures generally and who, in an ex parte proceeding, had authorized the application of those procedures to the individual tenant specifically. In any event, the judge appears to have treated as being before him, the Reeders' challenges to (a) the failure of the BHA to offer a pre-termination hearing as provided in G. L. c. 121B, § 32, (b) the reasonableness of the shortened time periods for taking various procedural steps, (c) the reasonableness of limitations on pretrial discovery, and (d) the appropriateness of evicting them because of the conduct of their adult son. On the other hand, the judge dealt with the Reeders' challenge to the validity of the order itself, ruling, for example, that the order was valid even if the Reeders had not received notice of the proposed order. Such a ruling would seem to have made it unnecessary for the judge to pass on the Reeders' general or facial challenges to the emergency eviction procedure.

Because the judge made no rulings of law or written statement of what he thought was properly before him, we are not able to determine with certainty what effect he gave to the order establishing the emergency eviction procedure when he passed on the Reeders' various challenges. We know that, in the course of argument on one of the Reeders' motions to dismiss, the judge said that the order was drafted to provide procedural due process; that the eviction procedure was ordered after a joint application of the BHA, the plaintiff class, and the plaintiff Tenants Policy Council; and that there was "a vast amount of literature with respect to representation by counsel in a class action which justifies what occurred here." He then rejected the Reeders' due process challenge to the order establishing the emergency eviction procedure.

We conclude then that, because the judge determined that the manner in which the emergency eviction procedure had been adopted met the requisites of due process, he did not give full consideration to the Reeders' subsequent

challenges to the substance of the emergency eviction procedure. We turn then to consider whether, as to the Reeders, due process requirements were met in the adoption of the emergency eviction procedure.

The Reeders argue that, if they are to be bound by the order establishing the emergency eviction procedure, due process of law requires their interests to have been fairly and adequately represented during consideration of the request for entry of the order. They do not insist, in this court, that due process of law required them to have received notice of the proposed order. In this they are correct, because the principal concern is the fairness and adequacy of the representation of their interests rather than whether they received proper notice. *Hansberry* v. *Lee*, 311 U.S. 32, 41-42 (1940). See *Alexander* v. *Aero Lodge No. 735*, 565 F.2d 1364, 1373-1374 (6th Cir. 1977), cert. denied, 436 U.S. 946 (1978); *Elliott* v. *Weinberger*, 564 F.2d 1219, 1228-1229 (9th Cir. 1977); *Wetzel* v. *Liberty Mut. Ins. Co.*, 508 F.2d 239, 256-257 (3d Cir.), cert. denied, 421 U.S. 1011 (1975). See also 3B Moore's Federal Practice par. 23.55, at 23-440 (2d ed. 1980); 7A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1786, at 142-143 (1972); Comment, The Importance of Being Adequate: Due Process Requirements in Class Actions Under Federal Rule 23, 123 U. Pa. L. Rev. 1217, 1233-1234 (1975). Rule 23 (d) of the Massachusetts Rules of Civil Procedure, 365 Mass. 767 (1974), reflects similar considerations. In his discretion, a judge may require the giving of notice of particular proceedings in an action, but notice is not required in all instances.[12] If the Reeders' interests were fairly and adequately represented, and in this and other ways procedural due process demands were met, the judge could reasonably have concluded in his discretion that notice to the Reeders, and other similarly

---

[12] Rule 23 of the Massachusetts Rules of Civil Procedure, 365 Mass. 767 (1974), grants more discretion to a judge concerning notification of class members than does the parallel Federal rule. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 700 n.16 (1975).

situated class members, was not required.[13] If, however, the representation of the Reeders' position was not fair and adequate, they, and others similarly situated, cannot be bound by the emergency eviction order. See *Gonzales* v. *Cassidy*, 474 F.2d 67, 74 (5th Cir. 1973); *Dierks* v. *Thompson*, 414 F.2d 453, 456 (1st Cir. 1969).

We conclude that the interests of the Reeders, and persons similarly situated, were not adequately represented when on July 7, 1980, the judge acted on the joint motion requesting the establishment of the emergency eviction procedure. The Reeders were, of course, members of the class of tenants represented in the case. The request of the parties was no doubt representative of the views of a vast majority of the class. That fact, however, is not conclusive. A class representative has the responsibility to protect the interests of all class members. *Gonzales* v. *Cassidy*, 474 F.2d 67, 76 (5th Cir. 1973). In turn, counsel for a class has a continuing obligation to each class member. See *Pettway* v. *American Cast Iron Pipe Co.*, 576 F.2d 1157, 1176-1177 (5th Cir. 1978), cert. denied, 439 U.S. 1115 (1979); *Mandujano* v. *Basic Vegetable Prods., Inc.*, 541 F.2d 832, 834-835 (9th Cir. 1976) ("the attorney for the class is not to be viewed as a negotiator in a process of collective bargaining where majority rule prevails"). The judge, as well, has a role as the guardian of the absent parties' interests. See *United Founders Life Ins. Co.* v. *Consumers Nat'l Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971).

---

[13] The class representatives argue that, earlier in the *Perez* litigation, the Reeders and other classs members received adequate notice that the emergency eviction procedure, or something like it, might be adopted. A notice sent to class members earlier in the *Perez* litigation that the "BHA will evict nuisance tenants who destroy property and threaten other tenants" did not give adequate notice of the possibility of an order suspending regular eviction procedures. Similarly, the justified, longstanding concern, shown in the record, over the serious problem of security in BHA housing does not constitute notice. A class member is not obliged to monitor the litigation to be certain that his interests are being protected. See *Gonzales* v. *Cassidy*, 474 F.2d 67, 76 (5th Cir. 1973).

At the time the emergency eviction procedure was under consideration by the court, events had occurred involving the Reeders that made their position on adoption of the emergency eviction procedure contrary to the position advanced by the class representatives. Their son allegedly had committed a serious crime in May, 1980, which, if proved, would have justified application to them of the proposed emergency eviction procedure. The Reeders thus had a significant interest in opposing adoption of any order authorizing the emergency eviction procedure.

Nowhere in the record, however, is there any indication that the position of persons such as the Reeders were adequately presented to the court. Various contentions might have been advanced on behalf of their position, but were not. Argument might have been made that forceful use of normal eviction procedures would substantially achieve the desired goal; that the scope of the order was too broad because it authorized eviction even where the threat to public safety had been eliminated; that improved public safety might be achieved by other, less drastic, means; that any deterrent effect of such an order would have no impact when applied to events occurring before its entry; and that the order's asserted conflict with the requirements of leases, statutes, and rules should be addressed and perhaps resolved by changes in those conflicting leases, statutes, and rules. Whether these challenges would have been successful, we cannot say. We can say that the interests of the persons in the position of the Reeders should have been represented in the proceedings, and because those interests were not represented, the Reeders are not bound by the order and could not fairly be subjected to its terms. Consequently, the Reeders' case should not have been tried pursuant to the emergency eviction procedure and the judgment against them must be reversed.

2. *The authority of the class to waive rights.* Although what we have said disposes of the Reeders' appeal, we think it appropriate to consider certain matters argued by the parties that may bear on the future operation of the receiver-

ship and of any emergency eviction procedure. One of these subjects concerns how far the plaintiff class may effectively agree to surrender certain rights.

A person may waive his statutory and even his constitutional rights. See *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). In the course of civil litigation, a party may waive rights merely by failing to assert them. See, e.g., *Milano* v. *Hingham Sportswear Co.*, 366 Mass. 376, 379 (1974) (waiver of evidentiary trial in a contempt proceeding); *Sebastian* v. *Carroll*, 353 Mass. 465, 468 (1968) (waiver of right to remove case to another court); *Huntoon* v. *Quincy*, 349 Mass. 9, 16 (1965) (waiver of defect in notice of charges). Where constitutional rights have been involved in criminal cases, certain alleged waivers have been tested by careful scrutiny as to whether the defendant acted freely and knowingly. See *Johnson* v. *Zerbst*, *supra* at 464-465; *Ciummei* v. *Commonwealth*, 378 Mass. 504, 507 (1979). In some instances, the record before the court alone must justify the conclusion that a defendant acted voluntarily and with an understanding of the rights being waived. See *Boykin* v. *Alabama*, 395 U.S. 238, 242 (1969); *Commonwealth* v. *Foster*, 368 Mass. 100, 100-103 (1975). Not every asserted waiver of a constitutional right by a criminal defendant has been tested by the knowing and intelligent waiver standard; the requirement of a knowing and intelligent waiver has been applied generally only to the constitutional guarantees of a fair trial. See *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 235, 237 (1973) ("Our cases do not reflect an uncritical demand for a knowing and intelligent waiver in every situation where a person has failed to invoke a constitutional protection"); *Lydon* v. *Commonwealth*, 381 Mass. 356, 363, cert. denied, 449 U.S. 1065 (1980); *Camp* v. *United States*, 587 F.2d 397, 400 (8th Cir. 1978). In civil cases, waiver of a fundamental constitutional right is never presumed (*Aetna Ins. Co.* v. *Kennedy*, 301 U.S. 389, 393 [1937] [jury trial]), and always requires an intentional relinquishment of a known right or privilege. See *Metropolitan Transit Auth.* v. *Railway Express Agency, Inc.*, 323 Mass. 707, 709

(1949). In certain circumstances, however, a person may even waive due process rights in advance. *D.H. Overmyer Co.* v. *Frick Co.*, 405 U.S. 174, 185-186 (1972). In civil cases, where procedural rules not rising to the level of constitutionally protected rights are involved, a waiver might be found by the failure to assert those rights or from an agreement to waive them. Cf. *Camp* v. *United States, supra.*

Thus, with proper compliance with requirements of due process and court rules, the plaintiff class could waive a tenant's rights concerning lease termination set forth in the BHA's leases with its tenants. Such a waiver could not have been binding on persons in the status of the Reeders because, as we have said, a waiver would be against the interest of persons who might be subjected to the emergency eviction procedure for acts committed prior to its implementation. Consideration would have to be given as well to the interests of class members, not immediately subject to eviction by application of the emergency eviction procedure, who might oppose the procedure as a matter of principle, even though its possible effect on them would be only prospective and conditional. Careful consideration would also have to be given to whether the class was fairly and adequately represented in the proceeding and whether notice to the class should be given under Mass. R. Civ. P. 23 (c), 365 Mass. 767 (1974). The fairness of the class's waiver of procedural rights contained in court rules concerning pretrial discovery (assuming the rules are not amended) and the class's agreement to expedite hearings of emergency eviction cases might have to be tested, on a case by case basis, in order to assure that procedural due process was met. But we see no objection, within the limits of due process, to the class agreeing to accept lease modifications that permit different procedural rules to govern emergency eviction proceedings based on future misconduct specifically described in those rules.

Such a waiver is, in many respects, similar to a settlement — a surrender of certain rights by the class in exchange for certain benefits. Before approaching such a waiver, then,

the judge would have to demonstrate on the record why he concluded, in his discretion, that the solution was fair and reasonable. See *Cotton* v. *Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Bryan* v. *Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801-803 (3d Cir. 1974). We add that an amendment of the form of lease used by the BHA might be an effective supplement to any waiver approved by the class and authorized by the court. A lease amendment would provide notice to all tenants and would be permissible under the form of lease appearing in the record as a change required to comply with government "regulations," in this case a court order.

Notwithstanding the possibility that certain statutory rights might be subject to the doctrine of waiver, the attempted waiver in advance of a tenant's right under G. L. c. 121B, § 32, to request a hearing by the BHA prior to termination of his tenancy must be rejected. The class has no greater authority to waive a tenant's right to such a pre-termination hearing than does the tenant himself. Section 32 was enacted to provide certain procedural safeguards for tenants in public housing. In various circumstances, courts have long refused to give effect to purported waivers of statutory rights where enforcement of the particular waiver would do violence to the public policy underlying the legislative enactment. See *National Bond & Inv. Co.* v. *Flaiger*, 322 Mass. 431, 434 (1948); *Metz Co.* v. *Boston & Me. R.R.*, 227 Mass. 307, 309-310 (1917); *Desseau* v. *Holmes*, 187 Mass. 486, 488 (1905); *Brooklyn Sav. Bank* v. *O'Neil*, 324 U.S. 697, 704 (1945); 6A A. Corbin, Contracts § 1515, at 728-729 (1962 & Supp. 1980). In our opinion, public policy considerations demand that an agreement in advance to waive the statutory right to a pre-termination hearing before the BHA must be regarded as unenforceable. To accept such a waiver as valid would destroy the very purpose of the statute.

3. *The authority of the court to enter orders.* We think it is appropriate for us to discuss, in general terms, the authority of a judge to enter orders in an institutional receivership proceeding and particularly an order of the character involved in this case. The institutional receiver-

ship in this case differs from a traditional receivership,[14] and the limits of judicial authority in a receivership such as is involved in the *Perez* case are not well defined in decided cases. Indeed, the receivership of the BHA itself differs from those institutional receiverships established to assure that constitutional rights are protected. In constitutionally based receiverships, administrative rules and statutory provisions inconsistent with the fulfilment of constitutional mandates appropriately may be modified or set aside by court order. In the *Perez* receivership, however, no constitutional ruling underlies the order establishing the receivership. The receivership was ordered solely to achieve statutory goals. *Perez II, supra* at 730-738.

Once a court has taken the extraordinary step of creating a receivership to pursue a statutory objective toward which responsible public officials persistently failed to work, that court surely must have and must utilize a continuing authority to issue supplementary orders designed to assist in various detailed aspects of the operation of the receivership. The bold step of creating the receivership in the compelling circumstances fully set forth in our opinion in *Perez II* cannot appropriately be followed by a timid view of what the court may do in an attempt to make the receivership successful.[15] Judicial authority to enter implementing orders is

[14] Although the traditional law of receiverships may furnish some guidance about the receiver's powers (see, e.g., *Fauci* v. *Mulready*, 337 Mass. 532, 537-538 [1958]), that law is unlikely to be instructive concerning the authority of a court to issue orders in a situation such as is presented in the *Perez* case.

[15] Various commentators have said that the appropriate judicial response in this new class of institutional receivership, sometimes called a neoreceivership (*Perez II, supra* at 733-734), must be flexible and broad in order to meet the requirements of the situation. See Nathan, The Use of Masters in Institutional Reform Litigation, 10 U. Tol. L. Rev. 419, 454 (1979); Special Project: The Remedial Process in Institutional Reform Litigation, 78 Colum. L. Rev. 784, 863 (1978); Chayes, The Role of the Judge in Public Law Litigation, 89 Harv. L. Rev. 1281, 1313-1316 (1976); Comment, Equitable Remedies: An Analysis of Judicial Utilization of Neoreceiverships to Implement Large Scale Institutional Change, 1976 Wis. L. Rev. 1161, 1174-1175.

inherent in the equity power of the courts. See *Perez II*, *supra* at 729. See also *Commonwealth* v. *Andover*, 378 Mass. 370, 379 (1979) (constitutional and statutory violation); *Blaney* v. *Commissioner of Correction*, 374 Mass. 337, 342-343 (1978) (statutory violation); *Swann* v. *Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (constitutional violation). That authority, as to the *Perez* litigation, is further found in G. L. c. 111, § 127H (*a*), which authorizes injunctions where rental housing exists in violation of certain standards and the condition of the housing may endanger or materially impair a tenant's or the public's health or well-being. See *Perez II*, *supra* at 721-732.

We reject the Reeders' contention that an emergency eviction procedure would be beyond the scope of the receivership and thus beyond the authority of the court. The argument is that the receivership was created to deal with the deplorable conditions resulting from the poor administration of the BHA and that prompt evictions following the commission of certain criminal acts bear no significant relationship to remedying statutory deficiencies in the operation of the BHA. Contrary to this contention, we conclude that the *Perez* litigation is concerned primarily with the quality of the housing provided to BHA tenants through enforcement of the sanitary code. The judge was warranted in concluding (a) that safety in the various housing developments is a matter of relevant concern and (b) that the prevention of crime in the developments and the expeditious removal of criminals from them will tend to enhance the quality of the available housing. Whether, as a device selected to achieve this goal, an emergency eviction procedure should be adopted is a question for the court, considering various factors and alternatives, but we do not say that an emergency eviction procedure is so unrelated to the object of the receivership as to be beyond its scope. In any further consideration of the question of the adoption of an emergency eviction procedure, the judge should focus his attention on the question whether the order, which is equivalent to an injunction, is more broad than necessary to

achieve its purpose and whether the particular procedure adopted is the least intrusive available alternative. See *Perez II, supra* at 730 ("Of course an injunction is never lightly granted and, like other judicial remedies, should be no more intrusive than it ought reasonably be to ensure the accomplishment of the legally justified result").

The question whether a judge may issue orders intended to aid in achieving a statutory goal where that order conflicts with a requirement of law is a troublesome one. There may be reasonable means of avoiding such a conflict. For example, in this case, the appropriate public officials avoided a conflict with the court order by suspending certain regulatory requirements. In the case of conflicting court rules, judicial adoption of specific rules to govern emergency eviction procedures could eliminate any potential tension between the rules and a proposed judicial order. Although rules of court have the force of law and may not be disregarded by an individual judge (*Empire Apartments, Inc.* v. *Gray*, 353 Mass. 333, 337 [1967]), a court which has adopted a rule could determine, in its discretion, to relax or modify a procedural rule in the interest of justice. See *American Farm Lines* v. *Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970). Thus, an amendment of, or special supplement to, the Uniform Summary Process Rules might be proposed for application to certain eviction actions.[16] Alternatively, as to the *Perez* proceeding, on a proper demonstration of need and a showing that adequate representation was given to all interested persons, this court could exercise its general superintendence power to suspend certain rules or to approve modifications. G. L. c. 211, § 3. See *State* v. *DeStasio*, 49 N.J. 247, 253, cert. denied, 389 U.S. 830 (1967).

---

[16] Although the Uniform Summary Process Rules were not effective until September 1, 1980 (and thus after the trial of this proceeding), the parties have discussed the question of the conflict between the emergency eviction procedure and court rules in terms of the new rules. The Massachusetts Rules of Civil Procedure do not apply to summary process actions (Mass. R. Civ. P. 81 [a] [7], 365 Mass. 841 [1974]), except as they may be incorporated by reference in the Uniform Summary Process Rules.

Where there is a conflicting statute, that conflict may not be eliminated as easily. The objective of denying a tenant the right to transfer an eviction proceeding from the Superior Court, as part of the *Perez* litigation, to the Housing Court of the City of Boston, a right granted by G. L. c. 185C, § 20, might be achieved by a request of the Chief Administrative Justice of the Trial Court to exercise his power of transfer of such cases from the Housing Court to the Superior Court or to exercise his authority to assign the judge to the Housing Court to hear such cases. G. L. c. 213, § 9. If the Chief Administrative Justice concluded such action to be appropriate, giving consideration to whether the judge should sit on all eviction cases under the emergency eviction procedure he himself established, the conflict with G. L. c. 185C, § 20, would disappear. Indeed, the entire argument concerning G. L. c. 185C, § 20, is really one of form rather than substance. The *Perez* class action was commenced in the Housing Court where the trial judge was then serving and it was transferred to the Superior Court and assigned to the judge only because he left the Housing Court upon his appointment to the Superior Court. See *Perez II, supra* at 713-714. That assignment of the *Perez* case to the judge may itself be sufficient to justify that part of the order that denied the right to transfer to the Housing Court eviction cases covered by the emergency eviction procedure.

Where there is a conflict between a statute and a proposed judicial order in an institutional receivership, it does not follow that the court is always powerless to enter the order. The BHA receivership is itself contrary to statutory direction. The Legislature has designated specific persons to manage, control, and govern housing authorities. G. L. c. 121B, § 5. The operating agency has numerous powers, including the right to bring suit. G. L. c. 121B, § 11 (*a*). The receivership intrudes substantially on the exercise of those powers and is justified, not by some judicially devised objective, but rather by the achievement of the greater statutory goal of safe and decent housing. See *Perez II,*

*supra* at 735-736. The judicial creation of the receivership was not a usurpation of legislative prerogative. It was an attempt to implement the legislative mandate that public housing meet certain minimum standards. If, of course, the court has misassessed the legislative purpose, the Legislature can change the governing legislation.

We consider then, in this context, the attempted abrogation by the emergency eviction procedure of a tenant's statutory right to request a hearing by the BHA at least fifteen days prior to any termination of his tenancy (except for nonpayment of rent). G. L. c. 121B, § 32. We do not accept the BHA's argument that the receivership itself immunizes the court and the receiver from compliance with statutes and regulations that bear on the operations of the BHA. See *Perez II, supra* at 727-728 (The "BHA in carrying on its housing functions is submissible to and must abide by the ordinary substantive law of the Commonwealth . . .").

The statutory rights of tenants should not be swept away simply because the BHA has mismanaged its affairs. While judicial orders concerning the BHA itself may be entered in order to assist in achieving the statutory goal of safe and decent housing, the reasons justifying such orders do not warrant the disregard of statutory rights extended to third parties, the tenants. The principle of separation of powers requires that the court not intrude into an area that is fundamentally legislative. See *Opinion of the Justices,* 321 Mass. 772, 777-778 (1947).

We see no justification for a court to disregard or overrule the requirements of § 32. As we have said, the Legislature has prescribed procedural requirements concerning the termination of leases of tenants in public housing. The fact that the Commonwealth might have adopted other means of meeting Federal requirements concerning lease termination procedures does not justify nullifying the provisions of § 32.[17]

---

[17] The BHA makes a persuasive case that § 32 derives, word for word, from G. L. c. 121, § 44, inserted by St. 1968, c. 596, and was in response to a requirement of HUD that in local, federally funded housing develop-

On the record, the judge does not appear to have given any consideration to the conflict between his order and § 32. We are unable to perceive any basis on which § 32 properly can be swept aside by judicial order. If, as we have said, as a matter of public policy, the tenant himself may not effectively waive his statutory right to a hearing before his lease is terminated, surely as a matter of public policy a court should not be able to impose a "waiver" on him. The solution lies in an amendment of § 32, or in the development of an emergency eviction procedure that does not contravene § 32.

4. *Bias of the judge.* We see no indication that the judge should not have presided at the trial of the Reeder case. The fact that he appointed the receiver and approved the emergency eviction procedure did not require him to disqualify himself. We do not know what the judge learned in the course of considering the receiver's ex parte application that the Reeders be subject to the terms of the emergency eviction procedure. However, even if the trial had been jury waived, we would regard the matter of disqualification as largely within the discretion of the judge. See *Commonwealth* v. *Coyne,* 372 Mass. 599, 602-603 (1977). Of course, the greater a judge's involvement with extraneous pretrial matters the closer will be the scrutiny given to the fairness of the proceeding.

---

ments (such as the Charlestown development in which the Reeders live), the BHA must provide a tenant with reasons for his eviction and an opportunity to reply in a private conference or in some other appropriate manner. See *Thorpe* v. *Housing Auth. of Durham,* 393 U.S. 268, 272-273 n.8 (1969). HUD does not insist on an administrative hearing in those jurisdictions "which require that, prior to eviction, a tenant be given a hearing in court containing the elements of due process." 24 C.F.R. § 866.51(a) (1980). The BHA's determination, of course, was open for review in the Reeders' eviction proceeding (G. L. c. 121B, § 32), and clearly the procedures of the eviction proceeding itself, at least as applied, conformed to the requirements of procedural due process.

All of this does not eliminate the requirement of § 32 that there be a pre-eviction hearing before the BHA nor does it show, as the BHA claims, a conflict between § 32 and Federal regulations. It does, however, put in perspective the apparent legislative purpose behind the adoption of the requirement and does show that, in this respect at least, the emergency eviction procedure conforms to Federal requirements.

Any showing that the judge was motivated by a desire to set an example by evicting the Reeders would present a serious problem. We note the judge's introductory remarks to the jury concerning public housing problems in Boston, the need to appoint a receiver for the BHA, the travesty of the lack of safety and security for BHA tenants, the necessity of establishing an emergency eviction procedure, and the fact that the Reeder case was the first one brought under the emergency procedure. None of these remarks had any bearing on the questions before the jury.

5. *Eviction for the acts of another household member.* The Reeders challenged the propriety of evicting them because of the criminal conduct of their adult son who resided with them. They claim that they may be evicted only for good cause and that the acts of their son do not constitute good cause to evict them. We assume any eviction of persons in the position of the Reeders must be based on good cause reasonably related to the protection of some legitimate interest of the public landlord. See *Bogan v. New London Hous. Auth.*, 366 F. Supp. 861, 866-868 (D. Conn. 1973). Cf. *Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1002-1003 (4th Cir. 1970), cert. denied, 401 U.S. 1003 (1971). See also G. L. c. 121B, § 32, which provides that the tenancy of a tenant of a housing authority may be terminated only for "cause" and on the giving of reasons in writing. If the criminal acts were performed by a tenant's relative who was not resident in the household at the time he committed those acts, there might well be no "cause" to evict the tenant. See *Tyson v. New York City Hous. Auth.*, 369 F. Supp. 513, 518-519 (S.D.N.Y. 1974). There is, on the other hand, authority suggesting that the situation is different when the miscreant is a member of the tenant's household. See *Lopez v. Henry Phipps Plaza South, Inc.*, 498 F.2d 937, 946 (2d Cir. 1974); *Caulder v. Durham Hous. Auth., supra* at 1000; *Housing Auth. of Portland v. Bahr*, 25 Or. App. 117, 121-122 (1976). When the judge presented the Reeder case to the jury, he added a condition to the right to evict them that was not within the terms of the lease. He

required that, to evict the Reeders, the jury must find that the Reeders knew or should have known of their son's propensity for violence to persons or property. This additional condition tended to establish a degree of culpability in the Reeders for the continued antisocial behavior of their son.

We do not know which conditions, if any, might hereafter be adopted for triggering the application of an emergency eviction procedure or terminating a BHA lease. We limit our comments to a few general observations. Although a tenant might not be liable for the misconduct of a person not a resident of the household, a tenant could properly be evicted for the acts of a household member in breach of the terms of the lease. In the interests of achieving safety in BHA projects, grounds for eviction may rationally be found in the wrongful conduct of household members other than the tenant, at least where the tenant knew or should have known of the violent tendencies of the other household member. The public interest may be served by a general rule allowing an eviction when, in the terms of the BHA lease, there is a "[r]easonable likelihood of serious repeated interference with the rights of other tenants" or the "[c]reation or maintenance of a serious threat to the health or safety of other tenants." These will be questions to be answered by the trier of fact and tested on appeal as to whether the evidence warranted such a finding. The notion that interference with or threats to the rights of other tenants justifying eviction can only come from a signatory of the lease (or his or her minor children) is itself illogical. Surely, a public housing authority cannot be left helpless to rectify a serious threat to the safety of other tenants simply because the signatory of the lease happens not to be the source of the threat.

6. *Stay of execution pending appeal.* We need not decide whether the judge acted lawfully and within any discretionary authority available to him in denying the Reeders' motion for a stay of execution. The parties ultimately agreed to a stay of execution pending appeal.

Apparently, the BHA does not argue that execution should issue in such cases before the passage of the statutory ten-day

appeal period following entry of judgment for possession of the premises. G. L. c. 239, § 5. It does argue that, after the expiration of this period, the judge may, in his discretion, deny a motion for a stay of execution pending appeal. Normally in a summary process action, if an appeal is claimed, no execution is issued pending appeal. See Rule 13 of the Uniform Summary Process Rules and Commentary; Mass. R. Civ. P. 62 (d), 365 Mass. 829 (1974); G. L. c. 231, § 115, as appearing in St. 1973, c. 1114, § 202. Although G. L. c. 231, § 115, directs that no execution shall issue during the pendency of an appeal, that section also acknowledges that it should not be "construed to impair the authority of a justice . . . to order a stay of execution upon such terms as are just." We do not read § 115 as intended to limit, if it could, the authority of the court to determine by rule when execution should issue. See *Boston Seaman's Friend Soc'y, Inc.* v. *Attorney Gen.,* 379 Mass. 414, 416-417 (1980). Rule 62 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 829 (1974), provides an exception to the general rule (that execution should not issue pending appeal) if an interlocutory or final judgment is entered "in an action for an injunction" or "in a receivership action." In such a case, a stay of execution will not enter unless ordered by the court. General Laws c. 231, § 116, acknowledges similar power in the court. We think that the question of the issuance or denial of a stay of execution pending appeal in a case under the emergency eviction procedure is a discretionary one for the judge within the spirit of Mass. R. Civ. P. 62 (a) and G. L. c. 231, § 116.

7. The judgment against the Reeders is reversed, and judgment shall be entered for the defendants.

*So ordered.*