ANN E. TOWLER vs. CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1]

No. 93-P-263.

Suffolk. February 15, 1994. - September 13, 1994.

Present: JACOBS, PORADA, & GREENBERG, JJ.

Retirement. Contributory Retirement Appeal Board. Fire Fighter, Widow's pension. Municipal Corporations, Pensions. Waiver.

The Contributory Retirement Appeal Board did not commit error or abuse its discretion in refusing to allow a fireman's widow, who had been receiving a pension pursuant to G. L. c. 32, § 9, to seek and receive a retroactive pension under G. L. c. 32, § 100, twenty-two years after her husband's death and at least twelve years after she withdrew her first § 100 application. [279-282]

CIVIL ACTION commenced in the Superior Court Department on January 13, 1992.

The case was heard by R. Malcolm Graham, J.

Kenneth J. Butterworth for the plaintiff.

Robert J. O'Sullivan, Assistant City Solicitor, for Lawrence Retirement Board.

JACOBS, J. On October 30, 1967, Alfred C. Towler, a firefighter for the city of Lawrence, complained of chest pains while performing his duties at a fire scene and died within minutes of returning to his fire station. His death certificate lists the cause of death as coronary thrombosis. Within a month, an attorney forwarded to the defendant Lawrence retirement board (board) the signed application of Mrs. Towler, the firefighter's widow, "for a pension under the provisions of [G. L. c. 32, §§ 9 & 94]." Shortly thereafter, the board awarded a pension to Mrs. Towler pursuant to G. L. c. 32, § 9, essentially comprising two-thirds of her hus-

---

[1]Lawrence retirement board.

band's annual salary at the time of his death, together with an additional annual pension of $312 for each of her three sons.[2]

In 1977, Mrs. Towler filed an application with the board for benefits under G. L. c. 32, § 100, which in pertinent part (as appearing in St. 1969, c. 123) provides to the surviving spouse of a firefighter who is killed or suffers fatal injuries "while at the scene of a fire" annual pension benefits essentially in the full amount of the firefighter's salary. That same year and prior to the board taking any action, Mrs. Towler, through an attorney, filed a withdrawal of that application. In 1989, she again applied to the board for pension benefits under § 100. The record contains no explanation for the delay between applications. When the board denied her 1989 application, Mrs. Towler appealed to the defendant Contributory Retirement Appeal Board (CRAB), which assigned the matter to the Division of Administrative Law Appeals. An administrative magistrate, after a hearing, ordered that she be awarded benefits pursuant to G. L. c. 32, § 100, retroactive to the date of her husband's death. Upon review, CRAB rejected that award and affirmed the board's denial of the application. Mrs. Towler's subsequent appeal to the Superior Court was unavailing and she now appeals to this court. We affirm the Superior Court judgment and the denial of the application for § 100 benefits.

---

[2]General Laws c. 32, § 9(1), as appearing in St. 1945, c. 658, § 1, provides, in pertinent part, for the payment of a pension upon the receipt by a retirement board of "proper proof" that an employee in an eligible category of governmental service "died as the natural and proximate result of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties . . . ." The amount of the allowance, in 1967, to the designated beneficiary of such employee, consisted "of a yearly amount of pension equal to two thirds of the annual rate of regular compensation of such [employee] on the date such injury was sustained or such hazard was undergone, or equal to two thirds of the average annual rate of his regular compensation for the twelve-month period for which he last received regular compensation immediately preceding the date of his death, whichever is greater." G. L. c. 32, § 9(2), first par., as appearing in St. 1948, c. 446, § 1. This subsection was later amended by St. 1971, c. 960, § 1, which substituted "seventy-two per cent" for "two thirds" in that section.

The magistrate, relying principally on a 1989 physician's opinion letter, concluded that Mrs. Towler was eligible to receive benefits under § 100 and that she was not estopped from applying for those benefits. In her decision, the magistrate found that the board had not informed Mrs. Towler "of her potential rights pursuant to G. L. c. 32, § 100," and stated also that Mrs. Towler "was told she qualified for [§ 9] accidental death benefits which she subsequently applied for and received." She also found the board "failed to demonstrate that [Mrs. Towler] in any way acted in bad faith." Upon review of the magistrate's decision, CRAB adopted her factual findings, but concluded that the board had not erred in denying Mrs. Towler's application. In so deciding, CRAB determined that Mrs. Towler had been receiving § 9 benefits since 1967 and had made an election at that time. CRAB further supported its decision by noting that Mrs. Towler had filed and withdrawn a § 100 application in 1977 and had therefore been aware of her possible rights under § 100, "since at least 1977."

The Superior Court judge concluded that "[t]he administrative record . . . indicates that CRAB's decision was based on substantial evidence and on existing law." He noted that § 100 states that its benefits are in the alternative to any other benefits under c. 32 and that "Mrs. Towler cannot now make an application" for § 100 benefits when she had been aware of her possible entitlement under § 100 "at least since 1977 when she withdrew her application" and "chose to continue to receive . . . benefits under G. L. c. 32, §§ 9 and 94."

There is no merit to Mrs. Towler's argument that § 100 does not allow for an election from among pension alternatives. That argument, based upon the direction in § 100 that benefits "shall be paid," not only ignores similar language in § 9, but also fails to recognize the significant differences in benefits and application burdens in the two sections, especially in 1967, when Mrs. Towler first applied. The general presumption of G. L. c. 32, § 94, relating a fatal heart attack suffered by a firefighter to his official duties, is made

unavailable to an applicant for § 100 benefits by the express provisions of that section. See *Buteau* v. *Norfolk County Retirement Bd.*, 8 Mass. App. Ct. 391, 394 (1979). Moreover, the 1967 version of § 100 did not contain any provisions for the continuance of the annual pension based upon the firefighter's salary in the event of a widow's death or remarriage (see G. L. c. 32, § 100, as inserted by St. 1964, c. 268),[3] while a widow's annual benefits under § 9 continued to be paid to her children during their minority or incapacity in the event of her death or remarriage. Accordingly, in 1967, there were significant reasons for an applicant to elect to receive benefits under § 9 rather than § 100 and, in some circumstances, a mandatory imposition of § 100 benefits would not have been in the best interests of the firefighter's family. Moreover, the reliance of the magistrate on the failure of the board to inform Mrs. Towler of her rights under § 100 and upon her good faith is misplaced. At least until 1987, nothing in c. 32 required such notification.[4] Moreover, a finding that Mrs. Towler was not informed of her potential rights under § 100 does not compel the conclusion that she was unaware of those rights, especially in view of the fact that her original application for benefits, in 1967, was filed through an attorney. In any event, the outcome of this appeal need not rely upon the notion of an election made in 1967. Even if Mrs. Towler's 1967 application for § 9 benefits was based on her good faith belief that she was entitled to no

---

[3]Statute 1973, c. 685, amended G. L. c. 32, § 100, to provide that in the event of the death or remarriage of an eligible widow payment is to be made to the legal guardian of the children of the deceased firefighter of "seventy-two per cent of the pension which said widow was receiving at the time of her spouse's death or remarriage." It was later provided that the act would take effect "as of January first, nineteen hundred and seventy-two." See St. 1973, c. 982. Both § 9 and § 100 of c. 32, at all pertinent times, contained separate provisions for the payment of $312 per year for the benefit of each child of the deceased employee for certain defined periods.

[4]Statute 1987, c. 697, § 55, amended G. L. c. 32, § 20, by adding par. (5)(*k*), which requires retirement boards upon written request to provide a "member or representative" written notice of "the benefits to which [the] member is or may be entitled. . . ."

other benefits, her application for § 100 benefits in 1977 establishes her awareness, at that time, of the provisions of that statute, which includes the statement that its "benefits . . . shall be in the alternative to the benefits provided by any other section of this chapter . . . ." See G. L. c. 32, § 100, as appearing in St. 1973, § 685. By withdrawing her application, Mrs. Towler made an election to continue receiving benefits under § 9.[5] While nothing in c. 32 expressly makes an election irrevocable or imposes a time limit on reapplication, that same absence of statutory direction or relevant regulation[6] leaves it to CRAB, acting under G. L. c. 32, § 16(4), to strike a reasonable balance between the rights of claimants and the interests of retirement boards in fair and orderly administration of the pension laws.[7] General Laws c. 30A, § 14(7), as appearing in St. 1973, c. 1114, § 3, under which judicial review of CRAB decisions is conducted, directs that a reviewing court "shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." CRAB's refusal to permit Mrs. Towler to seek and receive, in 1989, a retroactive pension under § 100, twenty-two years after her husband's death and at least twelve years after she withdrew her first § 100 application, is

---

[5]The reason for that election is not clear in the record. The fact that her youngest child was over the age of eighteen when Mrs. Towler withdrew her application and her counsel's representation that the withdrawal was made "after extensive research into the legislative background in the laws affecting the application of my client" support the supposition that the election was made on the basis of perceived difficulties in establishing eligibility under § 100. There is no indication in our record that Mrs. Towler at that time presented any expert evidence of the causal relationship between her husband's death and the events of October 30, 1967.

[6]See 840 Code Mass. Regs. §§ 4.00 - 25.00 (1993). The record does not contain any rules or regulations of the defendant Lawrence retirement board.

[7]For a discussion of situations, under Federal law, where the absence of legislative or regulatory standards by which to evaluate an agency exercise of discretion may place the agency decision virtually beyond judicial scrutiny, see 2 Koch, Administrative Law and Practice § 9.35 (1985 & Supp. 1994).

not unfair, incorrect as matter of law, see G. L. c. 30A, § 14(7), or an abuse of discretion.

Whatever may have been Mrs. Towler's right to approval of her 1977 application based on her good faith ignorance of the law in 1967 and notwithstanding her prior receipt of benefits under § 9, which for at least a four-year period afforded her children potential benefits which were unavailable under § 100, CRAB did not commit error in concluding that her withdrawal of her 1977 application and her failure to press it for the next twelve years barred her 1989 application. By so ruling, it implicitly was applying long established principles of election and waiver, grounded in pragmatic considerations of certainty and finality. "Election exists when a party has two alternative and inconsistent rights, and it is determined by a manifestation of choice." *Snow* v. *Alley*, 156 Mass. 193, 195 (1892). Even if her 1977 election is not construed as irreversibly binding, certainly any residual rights were waived when Mrs. Towler did not exercise them for twelve years. "[A] party may waive rights merely by failing to assert them." *Spence* v. *Reeder*, 382 Mass. 398, 411 (1981). "[A] waiver, partaking of the principle of an election, like an election needs no consideration, and cannot be retracted." *Martin* v. *Norwood*, 395 Mass. 159, 162 (1985).

*Judgment affirmed.*