BERNARD HODESS & others[1] *vs.* EMILY BONEFONT.

Worcester. January 16, 1987. — March 3, 1987.

Present: GREANEY, C.J., KAPLAN, & ARMSTRONG, JJ.

*Massachusetts Housing Finance Agency. Housing. Landlord and Tenant,*
    Eviction. *Intentional Conduct. Due Process of Law*, Housing, Liability
    for acts of another, Burden of proof. *Parent and Child*, Liability for
    acts of child.

In proceedings by the owners of a publicly-financed, multifamily housing
    development to evict a tenant on the basis of a burglary committed by
    the tenant's two sons, the judge erred in concluding that the plaintiffs
    had not established "cause" to justify the defendant's eviction where the
    owner of a public housing project has the benefit of an inference that
    the tenant is aware of potential problems and able to exercise some
    influence or otherwise prevent violent and destructive conduct by a
    member of his household on the premises, and where the tenant failed
    to negate the inference by showing that she could not have foreseen or
    prevented her sons' acts. [580-582]

SUMMARY PROCESS. Writ in the Worcester County Division
of the Housing Court Department dated December 3, 1985.

The case was heard by *John G. Martin*, J.

*Roger J. Brunelle* (*Eugene L. Rubin* with him) for the plain-
tiffs.

*Nancy E. Rae* (*Erik Avildsen* with her) for the defendant.

GREANEY, C.J.    After a trial, a judge of the Worcester
County Housing Court concluded that the plaintiffs had not
established "cause" (under the standards discussed in *Spence
v. Gormley*, 387 Mass. 258 [1982]) to justify the defendant's
eviction from their Green Hill Towers development. We reverse
the judgment.

On August 19, 1985, the defendant occupied an apartment
under a written lease in the plaintiffs' 185-unit development.

---

[1] The plaintiffs are partners doing business as Greenhill Associates.

The development is financed by the Massachusetts Housing Finance Agency. Living with her were her two sons, David, age sixteen and Raphael, age fifteen. Sometime about 1:30 P.M. on that day, while the defendant was at work, Raphael broke and entered into a neighbor's apartment and stole a videocassette recorder and some money. The neighbor was not at home at the time, but the event was witnessed by another resident of the complex, who was able to identify the defendant's sons. David was apparently with his brother, Raphael, although it is not clear from the evidence whether David entered the apartment. David apparently tried twice before the burglary, and once afterwards, to reach his mother by telephone, but he was unable to speak to her. The videocassette recorder was recovered from the defendant's apartment.

The victim of the burglary suffered from lupus and multiple sclerosis. She indicated that "[a]s a result of [the] incident I am constantly worried and my health is declining." She also "question[ed whether] I should move," stating that "I become emotionally upset when I leave the house and see the people who are responsible for breaking into my home." There was also evidence that other residents expressed fears for their safety.

The defendant apologized and offered to pay for the damage. She also indicated to the victim and to management that if they pressed charges she "would be glad to go down to the juvenile court and do whatever had to be done." When management failed to do so, the defendant obtained a complaint against Raphael as a delinquent child, and a juvenile court committed him to the Division of Youth Services (D.Y.S.) until his eighteenth birthday. A few weeks after his commitment, Raphael was hospitalized for a ruptured appendix. After leaving the hospital, he returned to the defendant's apartment to recuperate while being watched by his twenty-one year old sister. When he was able to walk, the defendant called D.Y.S. and had him returned to custody. David continues to live in the apartment.

The plaintiffs sent the defendant notice of termination of her lease for "failing to live in a peaceful way respecting the

rights of other residents to privacy, security, and peaceful enjoyment as provided in Paragraph F. 2 of your lease." Paragraph F. 14 of the lease extends this obligation to "members of [the r]esident's household." Pursuant to MHFA requirements (spelled out in the lease), a conference was held to decide whether the plaintiffs would be permitted to proceed with eviction. The conference report, admitted in evidence, indicated that D.Y.S. could not guarantee a permanent setting outside the home for Raphael. In authorizing the eviction, the officer who conducted the hearing concluded that Raphael has no "pemanent setting" and that "[h]is behavior represents a threat to the safety and well-being of the residents at Greenhill Towers."

The judge found that both of the defendant's sons were involved in the incident, although he found Raphael to have been the principal wrongdoer. He considered the standards in *Spence* v. *Gormley, supra,* to be applicable to this case.[2] The judge noted that "the court has no evidence before it of previous acts of wrongdoing affecting other 'residents' in the complex." He also noted his view that "as grave as this incident is, it must be viewed as an isolated one and not foreseeable." The judge concluded that since "the defendant has taken steps to remove the primary offender from the premises and has stated her firm will that he not return to the premises if he should be released from custody," the plaintiffs were not entitled to judgment for possession.

---

[2] The plaintiffs argue that the *Spence* v. *Gormley* "cause" requirements does not apply to their housing development but applies only where a government agency charged with administering public housing, such as a housing authority, has brought an eviction action. They rely on the fact that the record does not clearly show that the development in which the defendant lived is subsidized by public agencies to the point where regulations governing public housing developments should apply to the eviction of tenants. See, e.g., *Lopez* v. *Henry Phipps Plaza South, Inc.,* 498 F.2d 937 (2d Cir. 1974). We need not decide the question because counsel for the plaintiffs did not object when the *Spence* v. *Gormley* decision was brought to the judge's attention, and accepted by him, as the controlling precedent. An issue not properly raised in the trial court cannot ordinarily be raised for the first time on appeal. *Stigmatine Fathers* v. *Secretary of Admin. & Fin.,* 369 Mass. 562, 565 (1976). See also *Dominick* v. *Dominick,* 18 Mass. App. Ct. 85, 93 (1984).

When a tenant in a multifamily development is charged with interfering with the quiet enjoyment and safety of other residents by reason of a crime, "cause" requires that the owner show an act sufficient to justify eviction committed by the tenant or a member of the tenant's household, and "some connection between the tenant and the conduct underlying the termination." *Spence* v. *Gormley,* 387 Mass. at 264. However, the owner is not required to present affirmative proof that the tenant had reason to know of the family member's criminal propensities and was unable to control the conduct. *Id.* at 265. The owner has the benefit of an "inference . . . that the tenant is aware of potential problems, and able to exercise some influence or otherwise prevent violent and destructive conduct on the premises." *Ibid.* To "negate the inference," the tenant must show "that she could [not] have averted the lease violation. In other words, if the tenant can show that she could not have foreseen and prevented her son's violence, there is no 'cause' to evict her." *Ibid.* See also *Spence* v. *O'Brien,* 15 Mass. App. Ct. 489 (1983). As we understood these standards, the existence of the inference required the defendant in this case to prove one of three circumstances: (1) that she could not have foreseen her son's commission of the break-in and theft; (2) that even though she might have foreseen the crime she could not have prevented its occurrence; or (3) that although she foresaw the crime she took reasonable measures to prevent it.

We can discern no evidence sufficient to support a finding that the defendant met one of these three circumstances. The defendant did not identify any considerations such as a "prior record of good conduct, that might have made [her son's criminal] conduct unforeseeable." *Spence* v. *Gormley,* 387 Mass. at 265-266. Nor does the fact that the defendant was at work when the incident happened, and unable to be reached by telephone, establish that the incident was not foreseeable or, if foreseeable, that it could not have been prevented. Most criminal or disobedient acts by juveniles are done outside their parents' presence. To find this type of evidence sufficient to negate the inference would create a loophole which we do not think was intended by the Supreme Judicial Court. The fact

that the defendant acted promptly in having Raphael committed to D.Y.S. does not provide a basis for concluding that she might have foreseen the conduct and did what she could to prevent it. If anything, this fact may tend to establish the opposite inference — that there had been known prior difficulties but that no serious effort had been made to control the difficulties through counselling, substitute care, or other forms of aid until something very serious occurred that called for drastic action. Indeed, the fact that the defendant was convinced that Raphael was solely responsible, even though the witness to the incident implicated her other son as well, is some indication that the defendant had knowledge of Raphael's propensities. The parent-child relationship is precisely the sort of relationship that gives rise to "the natural inference that the tenant is aware of and able to prevent potential misconduct" and which places on the tenant, in an action such as this, the obligation "to prove otherwise." *Spence* v. *Gormley,* 387 Mass. at 272-273.

In the defendant's favor, there was evidence that she was embarrassed, that she knew Raphael was wrong, that she had taught her children the difference between right and wrong, and that she felt that she should not be blamed for the incident because "I can't be with my children twenty-four hours a day." She also testified that she had arranged for Raphael to live in New York with his grandmother when he was released from D.Y.S. But this evidence is not sufficient, in our view, to satisfy her burden of proof. What is missing — and it is critical in this case — is some proof that this was a first-time incident or, if not the first incident, that the defendant had acted decisively and effectively to prevent a recurrence and that Raphael's act was for that reason unforeseeable. It was the defendant's obligation to provide that proof and without it the judge's finding that the "incident . . must be viewed as an isolated one and not foreseeable" cannot stand.[3]

---

[3] There was information in the plaintiff's answers to two of the defendant's interrogatories which might have assisted the defendant in negating the inference. The answers, however, were not introduced in evidence and

We recognize, as did the judge, that *Spence* v. *Gormley, supra,* and *Spence* v. *O'Brien, supra,* involved situations where there was evidence of knowledge by the tenants of prior bad acts by persons living with them. As we read those cases, however, we do not view that consideration as important in this case. The flaw in the trial judge's decision is his apparent reversal of the burden of proof, that error leading to his ultimate conclusion that the absence of evidence of other prior acts of wrongdoing by the defendant's sons established that the incident could not have been foreseen or prevented. It was the defendant's burden to adduce such evidence, not the plaintiff's, and none was introduced. The other arguments made by the defendant were answered adversely to her in the *Spence* v. *Gormley* decision.

The judgment is reversed. A new judgment is to be entered awarding possession to the plaintiffs.[4]

*So ordered.*

---

cannot be considered. See Smith & Zobel, Rules Practice § 33.6, at 324 (1975). Also, the fact that the defendant appeared pro se cannot provide a basis to overlook important deficiencies in the evidence. See *Mmoe* v. *Commonwealth,* 393 Mass. 617, 620 (1985), and cases cited.

[4] The parties have not, quite properly, made us aware of any change in the defendant's situation since the trial. In any event, the owner is entitled to possession if, at the time of the eviction hearing, it was entitled to judgment for possession. "[D]ue process inevitably entails some delay between the conduct claimed by the landlord to warrant termination of a tenancy and the decision whether termination is justified. . . . If . . . the [defendant's] boys have reformed [or] . . . can be kept away, this is all to the good. . . . But if [the landlord] was entitled to serve its notice of termination . . . due process does not require . . . [consideration] of improved conduct during the period consumed by the hearing . . . [or by the appellate] proceedings which [the tenant] initiated." *Lopez* v. *Henry Phipps Plaza South, Inc.,* 498 F.2d at 945-946.