NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-297

VA7 COHANNET LLC

vs.

PAMELA DONOVAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a bench trial in this summary process action, a judge of the Housing Court awarded the plaintiff (landlord) possession and costs. The defendant (tenant) appeals, raising various challenges to the conduct of the trial and the judge's findings and conclusions. We affirm.

Background. We summarize the judge's factual findings, supplemented by undisputed evidence in the record. In October 2019 the tenant began leasing an apartment in a multifamily housing complex in Taunton.[1] Her most recent lease term began on October 1, 2021, and terminated on September 30, 2022. The monthly rent during that term was $1,265.

---

[1] The landlord at the time was Cohannet Associates, LLC. There is no dispute that VA7 Cohannet LLC, is the current owner and lessor of the property.

On June 29, 2022, the landlord sent the tenant a letter offering to renew her lease at a monthly rent of $1,391.  The letter stated that the offer would expire on September 30, 2022, and that a new lease needed to be signed before that date.  On or about August 31, 2022, before any new lease was signed, the landlord sent the tenant another letter (nonrenewal notice) rescinding the offer and advising the tenant that her lease would not be renewed because of conduct by her that created "an unhealthy landlord/tenant relationship," constituting "fault" grounds for nonrenewal.

On September 26, 2022, the landlord served the tenant with a summary process complaint, alleging that it had a good-faith belief that the tenant did not intend to vacate by the end of the lease term.  The tenant filed an answer and one counterclaim relating to a late fee.[2]  The case went to trial on January 10, 2023, at which the judge heard testimony from the tenant and from the landlord's property manager, Brendaliz Veras.

Veras testified that the landlord's decision not to renew the lease was based on multiple encounters between the tenant and management staff in the summer of 2022.  According to Veras, the tenant repeatedly disparaged the staff, using vulgar

---

[2] The judge found that the tenant offered no evidence in support of her counterclaim.  The tenant does not challenge this finding on appeal.

language, and often called after hours and left messages, some as long as ten minutes, "cursing or calling different staff members . . . inappropriate names" while seemingly intoxicated. The judge credited Veras's testimony.

The tenant testified that in the summer of 2022 she was having trouble with a sliding glass door in her apartment. Maintenance staff visited her apartment on June 17, June 20, July 2, and July 11, 2022, but were unable to repair the door even though they marked each work order as complete. The tenant admitted that this "caused a lot of hostility" and "discontentment on [her] part," and testified that she acted out of frustration with the landlord's delay in repairing the door. The judge credited the tenant's "testimony concerning her increasing frustration with [the] Landlord."

The tenant also testified that she believed the landlord's decision not to renew the lease was in retaliation for her reporting the problems with the door to the Taunton board of health (board). In response to the tenant's reports, the board issued correction orders to the landlord on July 21 and December 12, 2022. The landlord ultimately replaced the door on December 14, 2022. The judge credited Veras's testimony that the door was a custom order and that the delay in replacing it resulted from issues with the vendor beyond the landlord's control.

Discussion.  We construe the tenant's brief to be raising the following arguments:  (1) she was erroneously deprived of her right to a jury trial; (2) the judge was biased against her; (3) the judge erred by rejecting her claim of retaliation; and (4) the judge should have found that the landlord breached the implied warranty of habitability.  In considering these arguments, "we accept [the trial judge's] findings of fact as true unless they are clearly erroneous, and we give due regard to the judge's assessment of the witnesses' credibility."  Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 306 (2005).  "[W]e scrutinize without deference the legal standard which the judge applied to the facts."  Id., quoting Kendall v. Selvaggio, 413 Mass. 619, 621 (1992).

We are unpersuaded by the tenant's contention that the judgment should be reversed because she did not waive her right to a jury trial either in writing or in open court.  In summary process actions, "a demand for jury trial shall be filed with the court no later than the date on which the defendant's answer is due."  Rule 8 of the Uniform Summary Process Rules (1980).  The tenant did not make a timely demand under this rule, and so the judge was not required to obtain a waiver from her before proceeding with the bench trial.  See Cort v. Majors, 92 Mass. App. Ct. 151, 153 (2017) ("Once a party has properly demanded a trial by jury, the case must proceed by jury trial unless there

4

is a valid waiver by the parties or a judicial determination that the right to a jury trial is not applicable . . ."). Nor did the tenant request a jury trial at any later point in the proceeding. Had she done so, the judge could have ordered a jury trial in her discretion, see Mass. R. Civ. P. 39 (b), 365 Mass. 801 (1974), but absent any such request, it is too late for the tenant to raise the issue on appeal. See Spence v. O'Brien, 15 Mass. App. Ct. 489, 499 (1983).

Relatedly, the tenant argues that she did not receive a fair trial because the judge was biased. This argument appears to be based on various adverse rulings that the judge made against the tenant. Adverse rulings alone, however, are insufficient to establish judicial bias except "'in the rarest circumstances' where they 'reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.'" Passero v. Fitzsimmons, 92 Mass. App. Ct. 76, 83 (2017), quoting Liteky v. United States, 510 U.S. 540, 555 (1994). This case does not present those rarest of circumstances.

Next, we have no basis to overturn the judge's credibility findings, which underpinned her conclusion that the landlord did not engage in retaliation. The judge correctly observed that, under G. L. c. 239, § 2A, the tenant was entitled to a rebuttable presumption of retaliation because the landlord sent the nonrenewal notice (which the judge treated as akin to a

5

notice to quit) within six months after the tenant made her reports to the board. But the judge went on to conclude that the landlord rebutted the presumption with clear and convincing evidence that it would have declined to renew the tenant's lease even had she not made the reports. In particular, the judge credited Veras's testimony that the landlord's decision not to renew the lease was based solely on the tenant's combative and verbally abusive conduct toward management staff. To the extent the tenant challenges this finding, we see no basis in the record to overturn the judge's assessment of the witnesses' credibility, an issue that is "quintessentially the domain of the trial judge." Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995).

Finally, the tenant argues that the landlord breached the implied warranty of habitability by failing to repair or replace the door within a reasonable time. The judge made no factual findings on this issue, concluding as a matter of law that the tenant was not entitled to raise breach of warranty as a counterclaim or defense because the landlord's claim for possession was based on allegations of fault on the part of the tenant. We see no error in the judge's conclusion, which the tenant does not challenge on appeal. Under G. L. c. 239, § 8A, a tenant has the right to raise breach of warranty as a counterclaim or defense to possession, but only where the action

6

for possession was "brought pursuant to a notice to quit for nonpayment of rent, or where the tenancy has been terminated without fault of the tenant."  Section 8A does not apply where, as here, the landlord's claim for possession is premised on fault.  See Spence, 15 Mass. App. Ct. at 499.  Thus, while the tenant is correct that the implied warranty of habitability requires a landlord to keep a tenant's apartment in habitable condition, she was not entitled to raise that claim as a defense or counterclaim in this action.  See id. (defense of uninhabitable conditions not available to tenant where landlord's claim for possession was premised on tenant's failure to prevent third party from selling drugs out of her apartment).  The tenant can raise the claim through a separate action for damages, as the judge explained at trial.  See Davis v. Comerford, 483 Mass. 164, 173 n.18 (2019) (breach of warranty of habitability "is a claim in the nature of abatement or damages" [citation omitted]).

In sum, having carefully reviewed the briefs, the record, and the entire trial transcript, we discern no ground on which to overturn the judgment for possession for the landlord.  We deny the landlord's request for appellate attorney's fees and costs.

Judgment affirmed.

By the Court (Rubin, Blake & Shin, JJ.[3]),

Assistant Clerk

Entered:  March 21, 2024.

---

[3] The panelists are listed in order of seniority.