HOMESAVERS COUNCIL OF GREENFIELD GARDENS, INC. *vs.* LUZ
SANCHEZ.

No. 06-P-1180.

Hampden. June 7, 2007. - October 10, 2007.

Present: COWIN, SMITH, & SIKORA, JJ.

*Emotional Distress. Intentional Conduct. Landlord and Tenant,* Quiet enjoy-
ment, Attorney's fees. *Damages,* Emotional distress, Breach of covenant of
quiet enjoyment, Attorney's fees.

In a summary process action, the evidence was sufficient to permit the judge
to find in favor of the defendant tenant on her counterclaim of interference
with quiet enjoyment in violation of G. L. c. 186, § 14, arising out of the
landlord's wrongful transfer of the tenant's Federal rent subsidy and subjec-
tion of the tenant to eviction proceedings for failure to pay a new, unlaw-
fully calculated rent, where the emotional distress that the landlord's viola-
tion caused, because it was foreseeable, could be viewed as a consequence
of interference with quiet enjoyment, and where the requirements relative
to common-law claims of intentional infliction of emotional distress were
not relevant to an analysis of emotional distress as a consequence of a
violation of § 14 [457-459]; further, even if the common-law requirements
for establishing a claim of intentional infliction of emotional distress ap-
plied to a claim of interference with quiet enjoyment in violation of § 14,
the evidence was sufficient to sustain a finding of intentional or reckless
infliction of emotional distress, where the landlord or its manager knew or
should have known that their actions were likely to cause emotional distress
to one in the tenant's position, where the landlord's conduct was extreme
and outrageous, and where the landlord's actions were the cause of the
tenant's distress, which was severe [459-461].

This court granted an award of appellate attorney's fees to the defendant in a
summary process action, where she was entitled to such an award pursuant
to both G. L. c. 186, § 14, and G. L. c. 93A, § 9. [461-462]

SUMMARY PROCESS. Complaint filed in the Western Division of
the Housing Court Department on August 12, 2002.

The case was heard by *Dina E. Fein,* J.

*James F. Donnelly* for the plaintiff.

*Katherine Callaghan* for the defendant.

COWIN, J. The plaintiff, Homesavers Council of Greenfield

Gardens, Inc., the owner of a Federally subsidized housing complex in Greenfield (landlord), appeals from a judgment of the Housing Court which, among other provisions, awarded the defendant, Luz Sanchez, a tenant at the complex (tenant), damages in the amount of $5,000 for emotional distress arising from the landlord's interference with the tenant's right of quiet enjoyment. See G. L. c. 186, § 14. The judge doubled the damages pursuant to G. L. c. 93A and awarded the tenant attorney's fees. The landlord does not appeal from other portions of the judgment. It presses a single point on appeal, specifically, that the judge's finding of intentional infliction of emotional distress is not warranted in the absence of the kind of evidence required under *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976). We think the argument misconceives the nature of damages for interference with quiet enjoyment. We conclude in addition that, even were the criteria of *Agis* applicable, the judge's findings were supported on this record. Accordingly, we affirm the judgment.

1. *Background.* Many of the underlying facts are not disputed. The landlord owned Greenfield Gardens, a housing complex that received so-called section 8 Federal rental subsidies[1] for a portion of the units. Maloney Properties, Inc., managed the property pursuant to a contract with the landlord. Between June, 1999, and March 1, 2002, the tenant, with her children, resided in an apartment at Greenfield Gardens with the assistance of a section 8 rental subsidy. In 2001, the tenant's annual income was $26,135, which she earned by working as a receptionist for an agency that serves victims of domestic violence. Based on that income, she was required to pay rent of $593 per month, with the remainder of her rent (forty-nine dollars) covered by the section 8 subsidy.

On March 1, 2002, the landlord, without notice to the tenant, terminated the tenant's section 8 subsidy and transferred that subsidy to another apartment.[2] At approximately the same time, the landlord conducted the tenant's annual recertification. Be-

---

[1]See *Wojcik* v. *Lynn Hous. Authy.*, 66 Mass. App. Ct. 103, 103 n.2 (2006), for a description of the Housing Choice Voucher (section 8) program.

[2]The landlord did so ostensibly because the section 8 benefit that the tenant was receiving was minimal, and the subsidy would be of greater value to a

cause a section 8 subsidy was no longer available, the landlord recertified the tenant under the section 236 program.[3] This had no immediate effect on the tenant, whose monthly rent remained at $593.[4]

However, in April, 2002, the tenant took an unpaid leave of absence from her employment because of depression. She began receiving public assistance, thereby reducing her annual income from $26,135 to $8,292. She accordingly sought a rent reduction to which she would plainly have been entitled had a section 8 subsidy been in place.[5] She was not informed until May, 2002, that her section 8 subsidy had been eliminated. On or about May 17, 2002, the landlord, calculating the tenant's rent at a continuing rate of $593 per month, served a notice to quit for nonpayment of rent of $889.50 for the period of April 1, 2002, through May 31, 2002.

On or about June 3, 2002, the tenant, by counsel, informed the landlord that she had not been notified of the termination of the section 8 subsidy, and requested that it be reinstated. On June 11, 2002, the landlord reduced the tenant's monthly rent from $593 to $575, which was the minimum section 236 rent available. Had the section 8 subsidy not been terminated, the tenant's share of the rent, given her reduced income, would have been $147 per month. Despite the fact that rent of $575 per month constituted eighty-three percent of the tenant's income, the landlord neither reinstated the section 8 subsidy[6] nor otherwise reduced her rent.

different tenant with lower income (and thus a higher subsidy rate). A specific number of units were eligible for section 8 subsidies, and no such subsidies were available after this transfer.

[3]The section 236 program provides a subsidy to mortgage lenders so that they will extend financing at a below-market rate to private developers to construct or rehabilitate apartments for low income use. Rents are established at below-market levels because the landlord can pass through to the tenants their reduced financing costs. See *Tedford* v. *Massachusetts Hous. Fin. Agency*, 390 Mass. 688, 690 (1984); *Volpe Constr. Co.* v. *First Natl. Bank of Boston*, 30 Mass. App. Ct. 249, 260 n.15 (1991).

[4]Even this figure ($593) was excessive. The correct monthly rent for section 236 purposes should have been $575.

[5]The section 236 program operates differently and the rent is not affected by the tenant's reduction in income.

[6]This presumably resulted from the fact that no other section 8 subsidies were then available.

In August, 2002, the landlord commenced the present proceeding seeking possession of the premises and unpaid rent of $2,039.50. The tenant, by counsel, again informed the landlord that her section 8 subsidy had been terminated wrongfully, and requested that the rent be adjusted accordingly. When this again produced no constructive response, the tenant asserted the illegality of the section 8 subsidy removal in an answer and counterclaim in the summary process case. The judge found that, "[u]pon receiving the notice to quit and summary process complaint, the tenant experienced severe emotional distress. She was anxious, fearful, [and] irritable, had difficulty sleeping, and had suicidal thoughts." The judge found also that the landlord knew, or should have known, that applicable Federal policies and procedures precluded the termination of the tenant's section 8 subsidy in the circumstances; that the tenant could not pay a rent of $575 per month once she stopped working; "and that charging a rent which amounted to 83% of her monthly income was likely to cause emotional distress."

At about the time that the present proceeding commenced, the tenant returned to work, her income increased, and the landlord established a new rent for her unit of $627 per month. Trial was scheduled for December 6, 2002. One day prior thereto, the landlord offered to recalculate the claimed rent arrearage by applying the tenant's section 8 share of $147 per month for the period of May through September, 2002, rather than the section 236 minimum rent of $575 per month, thus reducing the claimed arrearage to $444.50. On the day of trial, the landlord offered in addition to give the tenant the next section 8 subsidy that became available at Greenfield Gardens, and to collect from her during the interim only an amount equal to what she would have paid had the subsidy already been in place. The offers effectively settled those portions of the case that related to possession of the unit, restoration of the section 8 subsidy, and calculation of the rent arrearage.

After trial, the judge found that the landlord's actions had wrongfully eliminated an essential feature of the tenancy and thus constituted interference with the tenant's right of quiet enjoyment in violation of G. L. c. 186, § 14. Apparently applying the criteria of *Agis* v. *Howard Johnson Co.*, 371 Mass. at

144-145, the judge determined that the landlord's violation had caused the tenant emotional distress; awarded $5,000 in emotional distress damages; and doubled the award under G. L. c. 93A. In addition, she awarded statutory damages of twenty-five dollars, see G. L. c. 93A, § 9, on the basis of her finding that the language of the landlord's notice to quit had been unfair and deceptive; credited the landlord with $444.50 in unpaid rent; and awarded attorney's fees (subsequently determined to be $7,036.63).

2. *General Laws c. 186, § 14: emotional distress.* At the outset, the landlord's argument that the evidence was insufficient to demonstrate the intentional infliction of emotional distress is misplaced. The counterclaim on which the tenant prevailed was not one for intentional infliction of emotional distress, but rather one alleging interference with quiet enjoyment, a statutory violation. See G. L. c. 186, § 14, as amended by St. 1974, c. 192, § 1 ("any lessor or landlord who directly or indirectly interferes with the quiet enjoyment of any residential premises by the occupant . . . shall . . . be liable for actual and consequential damages or three month's rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee"). Having found that the landlord violated the statute by wrongfully transferring the tenant's section 8 rent subsidy and then subjecting the tenant to eviction proceedings for failure to pay a new, unlawfully calculated rent, a finding not challenged by the landlord, the judge determined that the landlord's violation caused the tenant emotional distress, and that such emotional distress was compensable as reasonably foreseeable consequential damages.

Whether damages for emotional distress may be awarded as consequential damages for a violation of G. L. c. 186, § 14, has not been decided expressly. Both the Supreme Judicial Court and this court have assumed, without saying so directly, that such damages are available. In *Simon* v. *Solomon*, 385 Mass. 91, 107-111 (1982), the court determined that an award of damages of $10,000 for a violation of G. L. c. 186, § 14, was redundant in light of a separate award of $35,000 for reckless infliction of emotional distress, but did not question the trial judge's instruction that actual and consequential damages under G. L. c. 186, § 14, could include any damage resulting from

emotional distress. See *Dorgan* v. *Loukas*, 19 Mass. App. Ct. 959, 960 (1985), wherein we affirmed without comment a finding of $2,000 in emotional distress damages as a consequence of the defendants' violations of G. L. c. 186, § 14.

We see no reason in law or policy why emotional distress, where foreseeable, should not be viewed as a consequence of interference with quiet enjoyment. Nor do we believe that the requirements of the *Agis* decision relative to common-law claims of intentional infliction of emotional distress must be imported into an analysis of emotional distress as a consequence of a statutory violation under G. L. c. 186, § 14. Negligent conduct, as opposed to wilful or reckless behavior, is all that is required for a violation of the quiet enjoyment statute. See *Cruz Mgmt. Co.* v. *Thomas*, 417 Mass. 782, 789 (1994); *Al-Ziab* v. *Mourgis*, 424 Mass. 847, 850-851 (1997). If foreseeable harm follows causally from the negligence, there is no basis for elevating the burden of proof of a single kind of harm (i.e., emotional distress) to that required with respect to a common-law tort where either intentional or reckless behavior must be present. Such an interpretation is inconsistent with the objectives of those remedial landlord-tenant statutes of which G. L. c. 186, § 14, is an example.[7]

With the requirements of *Agis* out of the way, the judge's finding that the landlord's actions caused the tenant emotional distress is unassailable. It takes little imagination to understand that a woman with children living in a subsidized apartment might find anxiety-provoking a threat to put her on the street for failure to pay an unreasonable, erroneously determined rent well beyond her limited financial capacity. The landlord's contention that the tenant's emotional distress preceded the § 14 violation is unpersuasive. The judge's finding that the tenant experienced severe emotional distress when she received the

---

[7]It is not clear whether the judge actually viewed the *Agis* standards as establishing the burden of proof with respect to emotional distress damages under G. L. c. 186, § 14. She did not cite *Agis* in her findings and rulings, and may only have employed certain of its terms ("extreme and outrageous," "severe emotional distress") as a way of characterizing the actions of the landlord or the effect on the tenant. If the judge did intend to rule that the tenant was required to prove the *Agis* elements, we disagree, but her result was correct and we may affirm, albeit on different grounds. See *Slocum* v. *Natural Prods. Co.*, 292 Mass. 455, 458 (1935).

notice to quit is warranted.[8] The judge could also find that the landlord's actions were wilful and, thus, per the Attorney General's regulations, a violation of G. L. c. 93A, § 2. See 940 Code Mass. Regs. § 3.17(6)(f) (1993) ("It shall be an unfair and deceptive practice for an owner . . . [f] To violate willfully any provisions of [G. L.] c. 186, § 14").[9]

3. *Intentional infliction of emotional distress.* While we have held that proof of the *Agis* factors is not a prerequisite for the recovery of emotional distress damages for violation of G. L. c. 186, § 14 (see part 2, *supra*), we conclude that the evidence here is sufficient to sustain a finding of intentional or reckless infliction of emotional distress even if the *Agis* factors are applied. "[O]ne who, by extreme and outrageous conduct and without privilege, causes severe emotional distress to another is subject to liability for such emotional distress even though no bodily harm may result." *Agis* v. *Howard Johnson Co.*, 371 Mass. at 144. To recover on this common-law claim, "[i]t must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . ; (2) that the conduct was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community' . . . ; (3) that the actions of the defendant were the cause of the plaintiff's distress . . . ; and (4) that the emotional distress sustained by the plaintiff was so 'severe' and of a nature 'that no reasonable man could be expected to endure it' " (citations omitted).[10] *Id.* at 144-145. The definitions thus focus on particularly reprehensible conduct combined with an intense effect on the victim of the defendant's behavior.

---

[8]The judge's conflation of the tenant's receipt of the notice to quit and her receipt of the summary process complaint, events that obviously occurred at different times, and with the latter coming when the tenant had largely recovered from her earlier depression, provides no basis for disturbing her finding of causation. The evidence supports a finding that the notice to quit caused the tenant emotional distress. While service of the summary process complaint came later, it may reasonably be inferred that it did not help the tenant's frame of mind.

[9]The same finding of wilfulness in turn justified the double damages award. See G. L. c. 93A, § 9.

[10]The operative words in the inner quotes were drawn from several sources in which the issue had previously been considered, including the Restatement

On this record, there is no basis for a finding that the landlord or its manager *intended* to inflict emotional distress; but there is certainly evidence that they knew or should have known that their actions were likely to cause emotional distress to one in the tenant's situation. Certainly following correspondence from the tenant's counsel on June 3, 2002, the landlord was on notice that the tenant's subsidy had been wrongfully terminated; that the tenant could not pay monthly rent of $575 on monthly income from public assistance of $691; and that the landlord's threat to evict her in these circumstances would be terrifying and intolerable. Indeed, the manager's employee in charge of the project testified that the situation "would definitely put stress on somebody," especially given that the tenant had young children.

The landlord argues that it was not foreseeable that its improper termination of the section 8 subsidy would cause the tenant emotional distress, in part because prior eviction proceedings between the parties had been resolved amicably.[11] The manager's transfer of the subsidy to a tenant who could derive a greater benefit from it may or may not by itself have been sufficient to make out a case of reckless infliction of emotional distress (although it did place the tenant in jeopardy if, as happened, her income was reduced), but this fails to take into account the landlord's contumacious refusal to correct the mistake, notwithstanding two written communications from the tenant's counsel and the tenant's counterclaims, until just before the case was called for trial. The judge could permissibly find that the outcome of the landlord's earlier dispute with the tenant could not reasonably have convinced it that its threat to evict in the quite different circumstances of the present case could not be the cause of significant distress.

The judge's finding that the landlord's actions were extreme

---

(Second) of Torts and decisions of courts of Arizona, California, Utah, and Virginia.

[11]The prior dispute was precipitated by a failure by the tenant to pay rent. The landlord commenced summary process proceedings; there was agreement by the parties on a payment plan; and the eviction action was dismissed. The tenant was not deprived of her section 8 subsidy and was never obligated to pay more than thirty percent of her income in rent or arrearages. The circumstances differed considerably from the secret, wrongful termination by the landlord of the section 8 subsidy that took place in the present case, followed by an attempt to enforce an unlawful rent.

and outrageous is warranted. The conduct occurred in total disregard of applicable substantive and procedural guidelines; it continued notwithstanding the tenant's efforts to obtain a correction; the landlord remained obdurate until confronted by an actual trial; and the actions subjected the tenant to potentially disastrous consequences. Contrary to the landlord's characterization, these were not merely "uninformed choices." The facts underlying *Beecy* v. *Pucciarelli,* 387 Mass. 589, 596 (1982), and *Rahman* v. *Federal Mgmt. Co.,* 23 Mass. App. Ct. 701, 705-707 (1987), on which the landlord relies, which cases held that the mere filing of a lawsuit is not extreme and outrageous conduct, fell far short of the level to which the behavior of the landlord sank in the present case.[12]

The evidence also supports findings that the landlord's actions caused the tenant's emotional distress,[13] and that the distress was severe. There was evidence that, while the tenant's depression had stabilized prior to her receipt of the notice to quit, her symptoms worsened markedly after the notice was served; she became anxious, frightened, irritable, extremely worried for the welfare of her children, was unable to sleep, and had thoughts of suicide. Severe emotional distress lasted about a month, with the effects subsiding somewhat thereafter. As we have stated, this occurred upon the tenant's receipt of the notice to quit, and the aftermath of the later service of the summary process summons and complaint is of little relevance. That unlawful elimination of her subsidy and imposition of a rent that she could not pay; likely eviction; and the absence of any apparent solution would cause emotional distress that was severe can hardly be doubted.[14]

4. *Attorney's fees.* The tenant has requested an award of ap-

---

[12]To the extent that the landlord argues that the tenant did not pay the section 8 amount as of May 17, 2002, the date of the notice to quit, there was no evidence that (1) the amount was actually calculated for her by the landlord, or (2) the landlord offered to accept that amount of payment by her to dismiss the eviction proceedings. The amount due claimed in the notice to quit ($889.50) was based upon the incorrect rental amount. As the judge noted, a substantial part of the unpaid rent claimed in the summary process summons and complaint ($2,039.50) was also attributable to the overcharging.

[13]While the judge did not make an explicit finding that the landlord's actions caused the tenant's distress, the finding is implicit in her decision.

[14]In light of our conclusions above, we need not address the tenant's claim

pellate attorney's fees. See *Yorke Mgmt.* v. *Castro*, 406 Mass. 17, 19 (1989). She is entitled to such an award pursuant both to G. L. c. 186, § 14, and G. L. c. 93A, § 9. The tenant shall have fifteen days from the date of this decision to file her application with appropriate support. The landlord may file an opposition within fifteen days of service of the tenant's application.

*Judgment affirmed.*

that the record also supports an action for negligent infliction of emotional distress.