NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-1478                                      Appeals Court


SCOTT REALTY GROUP TRUST[1]  vs.  DEBORAH R. CHARLAND.


No. 18-P-1478.

Plymouth.     March 16, 2020. - October 28, 2020.

Present:  Wolohojian, Massing, & Wendlandt, JJ.


Summary Process, Notice to quit.  Landlord and Tenant,
     Termination of tenancy, Rent.  Consumer Protection Act,
     Landlord and tenant.


Summary Process.  Complaint filed in the Falmouth Division
of the District Court Department on September 18, 2017.

After transfer to the Southeast Division of the Housing
Court Department, the case was heard by Anne Kenney Chaplin, J.,
and a motion to alter or amend judgment, or for a new trial,
also was heard by her.


Deborah R. Charland, pro se.
Robert L. Cooperstein for the plaintiff.


WOLOHOJIAN, J.  This appeal from a summary process eviction

action presents several novel questions concerning the

termination of a Section 8 tenancy.  Specifically, we must

_____

[1] Scott Bousquet, trustee.

decide whether the terms of the housing assistance payments contract (HAP contract) between the landlord, plaintiff Scott Realty Group Trust, and the Framingham Housing Authority (authority), the entity making housing assistance payments for the benefit of the tenant, restricted the landlord's ability to terminate the at-will tenancy without cause. We must also decide whether the provisions of the HAP contract and 42 U.S.C. § 1437f(d)(1)(B)(iv) (2012) required that the landlord's notice to quit specify the ground for terminating the tenancy. We conclude that the HAP contract did not restrict the landlord's right to terminate the at-will tenancy without cause, but that the tenant did not receive the notice to which she was due. We also conclude that the language of the notice to quit did not violate G. L. c. 93A, and that the judge did not err in awarding the landlord unpaid rent. For these reasons, we vacate in part and affirm in part.

Background.[2] Deborah R. Charland (whom we sometimes refer to as the tenant) has lived at 83 Cranberry Highway, Bourne, since approximately November 2008 under a Section 8 tenant-based assistance housing choice voucher program administered by the authority. Her tenancy began with a written lease from November

---

[2] The essential facts are undisputed, and no challenge is made to the trial judge's findings.

1, 2008, through October 31, 2009.[3]  Thereafter, she was a tenant at will.[4]

Charland was served with a thirty-day notice to quit on April 24, 2017, and she was served with a summary process summons and complaint on June 8, 2017.  Because the landlord did not comply with the requirement that a copy of the eviction notice be simultaneously supplied to the authority, the landlord withdrew the summary process action.

Charland was then served with a second thirty-day notice to quit on July 21, 2017, informing her that she needed to leave the premises by September 1, 2017.  Although it appears that the landlord wished to occupy the premises himself, the notice to quit did not state this.  The notice gave no reason for the landlord's decision to terminate Charland's at-will tenancy.

When Charland failed to vacate the premises, the landlord filed the underlying summary process complaint.  The complaint alleged that the landlord sought to evict Charland because she occupied the premises unlawfully "against the right of [the

---

[3] Charland has not included a copy of the lease (which was an exhibit at trial) in the record appendix.  However, she raises no issue concerning the terms of the lease, therefore its absence from the record is of no concern.

[4] Charland agrees that she has been a tenant at will since November 1, 2009.  Moreover, she raises no issue concerning any terms of the lease that may or would have carried over to her tenancy at will.  See Boudreau v. Johnson, 241 Mass. 12, 16 (1922).

landlord] because [of her] failure to vacate the premises . . . after a termination of [her] tenancy."  But the complaint did not did state why Charland's tenancy had been terminated.

After a trial, a judge of the Housing Court granted possession to the landlord and awarded $241 in rent that Charland had not paid as of the date of trial.  The judge also ordered judgment in favor of the landlord on Charland's counterclaim under G. L. c. 93A.  This appeal followed.[5]

Discussion.  We begin our discussion with a brief overview of the HAP contract between the landlord and the authority, and then turn to the particular provisions at issue in this case.

In order to receive Section 8 rent assistance payments for Charland's tenancy, the landlord was required to enter into an annual HAP contract with the authority, a public housing agency (PHA).[6]  The HAP contract is a form document published by the United States Department of Housing and Urban Development (HUD)

---

[5] Charland also appeals from the order denying her posttrial motion to alter and/or amend judgment and/or for a new trial, and purports to appeal from the order denying her motion for summary judgment.  While the latter order is not reviewable on appeal, both motions raised the same issues that we address in this appeal.  See Lavoie v. A Justice of the Dist. Court Dep't, 484 Mass. 1055, 1055 (2020) (order denying summary judgment motion not reviewable on appeal from judgment on merits, but underlying legal issues forming basis of motion may be reviewed).

[6] "If the PHA approves a family's unit and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family."  24 C.F.R. § 982.1(a)(2) (2017).

and is used to provide Section 8 tenant-based assistance under HUD's Housing Choice Voucher Program.[7],[8]  "The HAP contract must be in the form required by HUD."  24 C.F.R. § 982.451(a)(1) (2017).[9]  See 24 C.F.R. § 982.162 ("The PHA must use program contracts and other forms required by HUD headquarters, including . . . [t]he HAP contract between the PHA and the owner; and . . . [t]he tenancy addendum. . . .  Required program contracts and other forms must be word-for-word in the form required by HUD").

Each HAP contract has three parts:  part A, which consists of tenant-, lease-, and unit-specific details; part B, which is the body of the contract; and part C, which is the so-called

---

[7] "In the HUD Housing Choice Voucher (HCV) program, HUD pays rental subsidies so eligible families can afford decent, safe, and sanitary housing.  The HCV program is generally administered by State or local governmental entities called public housing agencies (PHAs).  HUD provides housing assistance funds to the PHA."  24 C.F.R. § 982.1(a)(1) (2017).

[8] "Section 8 assistance may be 'tenant-based' or 'project-based'.  In project-based programs, rental assistance is paid for families who live in specific housing developments or units. With tenant-based assistance, the assisted unit is selected by the family.  The family may rent a unit anywhere in the United States in the jurisdiction of a PHA that runs a voucher program."  24 C.F.R. § 982.1(b)(1) (2017).  See 24 C.F.R. § 982.353 (2017).  Charland's subsidy was tenant-based and, thus, although it was administered through the authority, she could use it outside of Framingham.

[9] We refer to the 2017 version of the Code of Federal Regulations throughout this opinion.

"tenancy addendum."[10]  A person or family receiving Section 8 housing assistance "is not a party to or third party beneficiary of the HAP contract."  24 C.F.R. § 982.456(b)(1).  As a result, "the [tenant or] family may not exercise any right or remedy against the owner under the HAP contract," other than "the owner's obligations under the tenancy addendum" and any lease between the landlord and the tenant.  24 C.F.R. § 982.456(b).  See 24 C.F.R. § 982.308(f)(2) ("The tenant shall have the right to enforce the tenancy addendum against the owner, and the terms of the tenancy addendum shall prevail over any other provisions of the lease").

Charland relies on two provisions of the tenancy addendum to argue that the landlord did not properly terminate her tenancy in 2017 and was not, therefore, entitled to possession.[11]

---

[10] "The HAP contract form required by HUD shall include an addendum (the 'tenancy addendum')."  24 C.F.R. § 982.308(f)(1).  "All provisions in the HUD-required tenancy addendum must be added word-for-word to the owner's standard form lease that is used by the owner for unassisted tenants."  24 C.F.R. § 982.308(f)(2).

[11] Although two HAP contracts were admitted as exhibits at trial, the record appendix contains only the one running from December 1, 2011, to November 30, 2012.  In other words, the document in the record was not in effect at the time Charland's tenancy was terminated.  Nonetheless, because the parties do not dispute that the authority continued to pay the Section 8 subsidy amount to the landlord, it is reasonable to infer that a HAP contract remained in place for the duration of Charland's tenancy.  The parties have given us no reason to think that the terms of the HAP contract between the landlord and the authority were different at the time the landlord sought to terminate her

First, she points to subparagraph 8(d)(3) to argue that her at-will tenancy could not be terminated without good cause. Second, she points to paragraph 8(g) to argue that the notice to quit needed to specify the reason for which her tenancy was being terminated.[12]  The pertinent parts of the tenancy addendum are reproduced in the margin.[13]

---

tenancy in 2017 than they had been from 2011 to 2012, the period covered by the HAP contract in the record.  In this regard, we note that the current version of the form HAP contract published by HUD is available on the Internet, and the tenancy addendum provisions upon which Charland relies appear substantially the same in the current version as they do in the one from eight years earlier that is in the record.  See United States Department of Housing and Urban Development, Form HUD-52641 (July 2019), https://www.hud.gov/sites/dfiles/OCHCO/documents/52641.pdf [https://perma.cc/2S4T-BCX4].

[12] The termination provisions of the HAP contract can be found in 24 C.F.R. § 982.310.

[13] "8.  Termination of Tenancy by Owner

". . .

"b[.]  Grounds.  During the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of:  . . . [three reasons that are not at issue here]; or

"(4)  Other good cause (as provided in paragraph d). . . .

"d[.]  Other good cause for termination of tenancy

"(1)  During the initial lease term, other good cause for termination of tenancy must be something the family did or failed to do.

1.  Was cause required under subparagraph 8(d)(3) to
terminate Charland's at-will tenancy?  Under common law, a
landlord can terminate an at-will tenancy at any time for any or
no reason.  See Bank of N.Y. Mellon v. King, 485 Mass. 37, 49

---

"(2)  During the initial lease term or during any
extension term, other good cause may include:

"(a)  Disturbance of neighbors,
"(b)  Destruction of property, or
"(c)  Living or housekeeping habits that cause
damage to the unit or premises.

"(3)  After the initial lease term, such good cause
may include:

"(a)  The tenant's failure to accept the owner's
offer of a new lease or revision;
"(b)  The owner's desire to use the unit for
personal or family use or for a purpose other
than use as a residential rental unit; or
"(c)  A business or economic reason for
termination of the tenancy (such as sale of the
property, renovation of the unit, the owner's
desire to rent the unit for a higher rent). . . .

"g.  Owner notice of grounds

"(1)  At or before the beginning of a court action to
evict the tenant, the owner must give the tenant a
notice that specifies the grounds for termination of
tenancy.  The notice may be included in or combined
with any owner eviction notice.

"(2)  The owner must give the PHA a copy of any owner
eviction notice at the same time the owner notifies
the tenant.

"(3)  Eviction notice means a notice to vacate, or a
complaint or other initial pleading used to begin an
eviction action under State or local law."

n.11 (2020), citing <u>Davis</u> v. <u>Comerford</u>, 483 Mass. 164, 166 n.4 (2019). Charland, however, argues that her at-will tenancy could not be terminated except for the reasons specified in subparagraph 8(d)(3) of the tenancy addendum, in essence superseding the provisions of common law.

Paragraph 8(b) of the tenancy addendum provides that "[d]uring the term of the lease (the initial term of the lease or any extension term), the owner may only terminate the tenancy because of . . . [o]ther good cause (as provided in paragraph d)." Paragraph (d) in turn identifies different types of "[o]ther good cause" depending on whether the termination occurs (1) "[d]uring the initial lease term," (2) "[d]uring the initial lease term or during any extension term," or (3) "[a]fter the initial lease term."[14] Because it is clear that Charland's tenancy was not terminated during the initial lease term, or any extension term of the initial lease, the only question is whether her tenancy was terminated "[a]fter the initial lease term" as that phrase is used in subparagraph 8(d)(3). Charland asks that we read this phrase to extend indefinitely so that it applies even when there is neither a lease nor an extension of one, and the tenancy has become at will.

---

[14] Essentially, the further into the tenancy, the more latitude the landlord has as grounds to terminate. See note 13, <u>supra</u>.

Read in isolation, without reference to any of the surrounding language, Charland's reading would have force because there is no temporal endpoint identified in the language of subparagraph 8(d)(3) itself. But contract language must be read in context, see Starr v. Fordham, 420 Mass. 178, 190 & n.11 (1995), and for this reason Charland's argument fails. In interpreting a contract, "[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." Sullivan v. Southland Life Ins. Co., 67 Mass. App. Ct. 439, 442 (2006), quoting Massachusetts Prop. Ins. Underwriting Ass'n v. Wynn, 60 Mass. App. Ct. 824, 827 (2004). Although it is true that subparagraph 8(d)(3) contains no limiting language, the introductory provision of paragraph 8(b) does. Specifically, paragraph 8(b) provides that a tenancy may be terminated for other good cause as provided in paragraph 8(d) when the termination occurs during "the term of the lease," which is defined as "the initial term of the lease or any extension term." Thus, reading subparagraph 8(d)(3) together with the provisions of paragraph 8(b) upon which it is dependent, it is clear that the phrase "[a]fter the initial lease term" means during any extension term of the lease. Subparagraph 8(d)(3) does not create what has been called an "endless lease," extending the good cause requirement indefinitely into the

future even after a tenant has become at will.  Rosario v. Diagonal Realty, LLC, 803 N.Y.S.2d 343, 348 (N.Y. Sup. Ct. 2005).  Our conclusion is consistent with the few cases from other jurisdictions to have considered the issue.  See In re Burch, 401 B.R. 153, 158 (Bankr. E.D. Pa. 2008); Rosina v. Parra, 853 N.Y.S.2d 458, 459 (N.Y. App. Div. 2007); Deutsche Bank Nat'l Trust Co. v. Tulloch, 900 N.Y.S.2d 837, 838 (N.Y. Dist. Ct. 2010).

Accordingly, once Charland became a tenant at will, the provisions of paragraphs 8(b) and 8(d) did not apply.

2.  Did paragraph 8(g) require that Charland receive notice of the ground for terminating her tenancy?  Under Massachusetts law, because Charland was a tenant at will whose tenancy was not being terminated for failure to pay rent, the notice to quit needed only to comply with G. L. c. 186, § 12.  See Adjartey v. Central Div. of the Hous. Court Dep't, 481 Mass. 830, 851 (2019); Spence v. O'Brien, 15 Mass. App. Ct. 489, 490 n.3, 495-496 (1983).  Under that statute, no explanation for the landlord's decision need be included in the notice to quit unless the termination is based on nonpayment of rent.  Charland argues, however, that the provisions of the HAP contract and 42 U.S.C. § 1437f(d)(1)(B)(iv) (2012) require otherwise.

Charland is correct that, under subparagraph 8(g)(1) of the tenancy addendum, she was entitled to "notice that specifies the

grounds for termination of [the] tenancy." As set forth in subparagraph 8(g)(3), that notice could be contained either in "a notice to vacate, or a complaint or other initial pleading used to begin an eviction action under State or local law." Thus, to prevail, Charland needed to show that neither the notice to quit nor the summary process complaint gave a reason for the termination of her tenancy. As to the first, it is undisputed that neither of the two notices to quit gave any reason for terminating Charland's tenancy. As to the second, although the summary process complaint alleged that Charland occupied the premises unlawfully "against the right of [the landlord] because [of her] failure to vacate the premises . . . after a termination of [her] tenancy," this language did not notify Charland of the reason her tenancy was terminated. Rather, it notified her only of the reason for the eviction: that she had failed to vacate the premises after the tenancy had been terminated. Thus, Charland did not receive the notice she was due either in the notice to quit or in the summary process complaint.

In a case such as this one, where an at-will tenancy is being terminated for no cause on the part of the tenant, one might question the purpose behind a requirement that the tenant receive notice that her tenancy is being terminated for no reason. Charland argues that, in such cases, the provision

provides a valuable benefit to Section 8 tenants as they seek their next housing.  In her view, landlords are generally reluctant to rent to Section 8 tenants, so it helps to be able to show that the previous tenancy ended through no fault of the tenant.  We need not decide whether Charland is correct in this view.  Even if the purpose of the notice requirement is not readily evident in the case of terminations without cause,[15] where Congress has not carved no-cause terminations out of the required contract language, Charland is entitled to its benefit. As provided in 42 U.S.C. § 1437f(d)(1)(B)(iv) (2012), "<u>any</u> termination of tenancy shall be preceded by the owner's provision of written notice to the tenant specifying the grounds for such action" (emphasis added).[16]

This case demonstrates that landlords of Section 8 tenants must be careful to comply with the notice provisions contained in paragraph 8(g) of the HAP contract tenancy addendum even

---

[15] It is important to remember that the notice provisions of paragraph 8(g) are not limited to no-cause terminations. Instead, the notice requirements are general, i.e., they apply whether the tenancy is terminated for cause or not.  It makes perfect sense that a tenant who is being terminated for cause be informed of the reason, especially given the provisions of the tenancy addendum restricting the reasons for which a tenancy may be terminated during the term of the lease.

[16] In light of our conclusion that the requirements of paragraph 8(g) were not satisfied, we need not decide whether, as Charland contends, 42 U.S.C. § 1437f(d)(1)(B)(iv) (2012) provides an independent right to notice that is enforceable by a tenant.

where the tenancy is at will.  Those notice provisions do not displace the landlord's ability to terminate an at-will Section 8 tenancy, but they do require that the tenant receive notice of the reason for the termination.  That reason must be contained either in the notice to quit or the summary process complaint. Where there is cause for the termination, either the notice to quit or the summary process complaint must so state; and the same is true where there is no cause for the termination.

3. <u>Did the notice to quit violate c. 93A</u>?  Charland contends that the following language in the notice to quit violated G. L. c. 93A because it was designed to, and did, cause her fear and emotional distress as a person of limited means and with disabilities:

> "HEREOF FAIL NOT, vacate the premises aforesaid on or before September 1, 2017, or we shall take due course of law to evict you from the same, including the attachment, seizure and levy of your personal property in order to satisfy any judgment for monies due including, but not necessarily limited to, interest, costs and reasonable attorney fees."

The judge, relying on G. L. c. 239, § 8A, concluded as a matter of law that Charland was not entitled to raise c. 93A as a defense or counterclaim to the landlord's claim of possession. With good reason, the landlord does not press this view on appeal.  See <u>Rental Prop. Mgt. Servs</u>. v. <u>Hatcher</u>, 479 Mass. 542, 552 (2018).

To establish a claim under G. L. c. 93A, § 9, a tenant must establish that the landlord committed an "unfair or deceptive act[] or practice[] in the conduct of . . . trade or commerce." G. L. c. 93A, § 2 (a). In certain circumstances, the contents of a notice to quit may violate the Attorney General's regulations interpreting G. L. c. 93A pertaining to the landlord-tenant relationship. See 940 Code Mass. Regs. § 3.17(2) (1993).[17] See also Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 458-459 (2007). Charland does not argue, let alone show, that the language in the notice to quit runs afoul of those regulations. Nor does Charland contend, or show, that the language incorrectly stated the remedies the landlord could pursue if forced to evict her. In these circumstances, Charland has failed to show that the notice was unfair or deceptive.

---

[17] "It shall be an unfair or deceptive practice for an owner to:

"(a) Send to a tenant any notice or paper which appears or purports to be an official or judicial document but which he knows is not;
"(b) Fail or refuse to accept any notice sent to any address to which rent is customarily sent, or given to any person who customarily accepts on behalf of the owner, or sent to the person designated in the rental agreement in accordance with [940 Code Mass. Regs. § 3.17(3)(b)(2)].
"(c) Demand payment for increased real estate taxes during the term of the tenancy unless, prior to the inception of the tenancy, a valid agreement is made pursuant to which the tenant is obligated to pay such increase."

4.  Unpaid rent.  Finally, Charland argues that the judge erred in awarding the landlord damages in the amount of Charland's portion ($241) of the March 2018 rent.  On the evidence presented, the judge could find that Charland had not yet paid her portion of the rent by the date of trial (March 5, 2018).  Charland does not dispute that her rent was due on the first of the month; nor does she dispute that the March 2018 rent had not been paid by March 1.  Although the judge credited Charland's testimony that she usually paid her rent during the first or second week of the month,[18] that history of late payment (even if understandable) did not alter the fact that her rent was due on the first of the month and that it had not yet been paid.

Conclusion.  Because Charland did not receive notice of the ground for the termination of her tenancy as required by paragraph 8(g) of the tenancy addendum to the HAP contract, so much of the judgment as awards possession to the landlord is vacated.  In all other respects, the judgment is affirmed.

So ordered.

---

[18] Charland receives her Social Security disability benefits check at her post office box on the third day of each month, but is not always able to get to it immediately.  As a result, during her tenancy, Charland has paid her rent during the first or second week of the month, rather than on the first day.